## STATE v. GREGORY LEE DANIELS.

200 N. W. 2d 403.

September 1, 1972—No. 43097.

*Thomson, Wylde & Nordby* and *Jack S. Nordby*, for appellant.

*Warren Spannaus*, Attorney General, *George M. Scott*, County Attorney, and *Henry W. McCarr, Jr.*, and *David G. Roston*, Assistant County Attorneys, for respondent.

Heard before Knutson, C. J., and Rogosheske, Peterson, and Kelly, JJ.

PETERSON, JUSTICE.

Defendant, appealing from a judgment of conviction of unlawful possession of narcotic drugs, contests the admissibility of the convictive tangible evidence and admissions obtained by police officers on the ground that the evidence was the product of a constitutionally impermissible house search.[1] Defendant contends, more specifically, (a) that the search warrant under which the officers acted was supported by an affidavit, containing information previously supplied by an unidentified informer, which failed to state sufficent facts and circumstances enabling the magistrate to make an independent judgment that the police had probable cause to search the described premises, and (b) that the supporting affidavit did not, in any event, contain a sufficient showing to justify a provision in the search warrant authorizing the police, as they did, "to enter [the] premises unannounced."

On July 29, 1970, Officer Wayne Brademan of the Minneapolis Police Department applied to the municipal court for a warrant to search, either day or night, defendant's residence at 929 Logan Avenue North for "Narcotic drugs including: Heroin, cocaine, marijuana, hashish and narcotic paraphernalia and pieces of identification to prove constructive possession of above contra-

---

[1] A motion to suppress these articles was heard at a combined Rasmussen hearing and trial, the case being tried to the court without a jury. The trial court ruled that the search warrant was not constitutionally defective and found defendant guilty.

band." In an affidavit accompanying the application, Officer Brademan stated:

"* * * For approximately the past two months I have received information from an informant whose information has recently resulted in narcotic arrests and convictions that a Gregory Daniels who resides at 929 Logan N, down has been selling marijuana, hashish and heroin. My informant further states that he has seen Daniels sell drugs, namely: heroin and further that he has seen Daniels with heroin on his person. The informant has seen heroin on the premises of 929 Logan N, (down) within the past 48 hours. In a check with the phone company directory, it lists a Gregory Daniels at 929 Logan N. My informant further states that Daniels is very much aware of the police. The affiant believes that because the contraband sought is easily disposed of, that an unannounced entry is necessary. * * *

"* * * [A] night time search is necessary to prevent the loss, destruction or removal of the objects of the search, in that the affiant is unaware of when Daniels will be home and it could possibly run into the nighttime."

After obtaining the warrant, police officers went to defendant's residence shortly after noon on the same day and, without knocking and announcing their presence or purpose, broke in the door by using a sledge hammer. Defendant and his girl friend, who appeared to have been in bed, were present in the house. After advising them that they were going to search the premises pursuant to the search warrant, the police commenced the search. The searching officers found a bottle containing 27 capsules of a black and white powder together with other narcotic drugs, drug paraphernalia, and firearms.[2] Defendant, who

_____

[2] Officer Philip Neese found the bottle of 27 capsules in the refrigerator in the kitchen, and in the living room he found drug paraphernalia, specifically, three boxes of gelatin capsules and a box of lactose powder. Officer George Bendt found a water pipe and some cigarette papers in the living room. In a men's jewelry box on a dresser in the bedroom, Officer Ronald Johnson found a small packet of hashish, and on the

was then arrested and advised of his rights, said of the 27 capsules, "This is heroin. I am selling it for a guy."

■ Defendant's first contention—that the affidavit in support of the search warrant, based upon an unidentified informer's tip, did not contain sufficient underlying facts and circumstances to enable the magistrate to judge for himself whether the police had probable cause to search the described premises— has no merit. The contention is based upon a mistaken interpretation of the three decisions of the United States Supreme Court articulating, in divided opinions, the information that such an affidavit must contain in support of probable cause: Aguilar v. Texas, 378 U. S. 108, 84 S. Ct. 1509, 12 L. ed. 2d 723 (1964); Spinelli v. United States, 393 U. S. 410, 89 S. Ct. 584, 21 L. ed. 2d 637 (1969); United States v. Harris, 403 U. S. 573, 91 S. Ct. 2075, 29 L. ed. 2d 723 (1971).

In Aguilar the United States Supreme Court held insufficient an affidavit which, in relevant part, recited simply that the police officers making it had "reliable information from a credible person" that Aguilar was keeping narcotics at his house. The court stated (378 U. S. 114, 84 S. Ct. 1514, 12 L. ed. 2d 729):

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observation of the affiant [citation omitted], the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed [citation omitted], was 'credible' or his information 'reliable.' Otherwise, 'the inferences from the facts which lead

---

same dresser Officer Brademan found a small wooden box containing marijuana. Officer Johnson found a number of rifles in the bedroom closet and several loaded handguns in the dresser. After the officers had found the heroin, hashish, and marijuana, and about the time Officer Johnson found the rifles, defendant said that they need not search any further since they had found all the drugs.

to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime,' [citations omitted], or, as in this case, by an unidentified informant."

In Spinelli, four members of the court, speaking through Mr. Justice Harlan, "further explicated" the principles stated in Aguilar. 393 U. S. 412, 89 S. Ct. 587, 21 L. ed. 2d 641. The affidavit in Spinelli contained an informant's tip deemed clearly inadequate under Aguilar, but contained other information obtained independently by the police about Spinelli's reputation and allegedly suspicious movements which arguably corroborated the tip. Rejecting the argument that the totality of information in the affidavit established probable cause, the plurality opinion suggested that the sufficiency of other information to corroborate an informer's tip, otherwise inadequate under the Aguilar test, should be subjected to this test (393 U. S. 415, 89 S. Ct. 588, 21 L. ed. 2d 643):

"The informer's report must first be measured against *Aguilar's* standards so that its probative value can be assessed. If the tip is found inadequate under *Aguilar*, the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well, however, the standards enunciated in *Aguilar* must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* test without independent corroboration?"

Mr. Justice Harlan stated that the information concerning the informant and his tip was insufficient to justify a search warrant because (a) the police officer making the affidavit offered the magistrate no reason in support of his conclusion that the informer was reliable and credible, and (b) the officer did not state how the informer obtained his information in sufficient

detail so that the magistrate could determine that the informer relied on something more than a casual underworld rumor. So tested, the police corroboration of limited aspects of the tip neither enhanced the informer's reliability nor independently suggested the existence of criminal conduct.

In Harris, the court more recently addressed itself to the question of what information concerning an informer's tip is sufficient for the magistrate to conclude that the informer was reliable and credible. The affidavit there recited that affiant had interviewed the informant and felt that he was a "prudent person." Mr. Chief Justice Burger, in a three-part opinion, no part of which commanded a majority, stated that there was substantial basis for the magistrate's believing that the informer was truthful because (a) the accusation by the informant was a declaration against interest and (b) the affiant corroborated the informant's information by stating that he had personal knowledge of Harris' reputation and, further, that he had received information "from all types of persons as to his activities." 403 U. S. 575, 91 S. Ct. 2078, 29 L. ed. 2d 729. The search warrant was held valid and the conviction was affirmed.

Harris may not, in our view, be interpreted as making it more difficult for police to obtain a search warrant on the basis of information stated in an affidavit in reliance on an unidentified informer's tip. If anything, the contrary is true, and Mr. Chief Justice Burger's opinion arguably signaled an abandonment of the Aguilar analysis. See, Note, 85 Harv. L. Rev. 53. But this we need not decide for we conclude that the affidavit in the instant case clearly meets the two-pronged Aguilar test (and, a fortiori, the Harris test):

a. The affidavit states that the informant has seen defendant sell drugs, has seen heroin on defendant's person, and has seen heroin at defendant's residence within the past 48 hours. There seems to be no dispute that such personal observation satisfies that part of the Aguilar test which requires that the affidavit contain facts to enable the magistrate to judge whether the in-

formant obtained his knowledge in a reliable manner. See both Mr. Chief Justice Burger's opinion and Mr. Justice Harlan's dissent in Harris, 403 U. S. 579, 589, 91 S. Ct. 2079, 2084, 29 L. ed. 2d 731, 737. See, also, this court's post-Harris opinion in State v. LaBarre, 292 Minn. 228, 195 N. W. 2d 435 (1972).

b. The credibility of the informer is sufficiently shown in the affidavit by the statement that the informant's information "has recently resulted in narcotic arrests and convictions." This is sufficient factual information to support the conclusion of the magistrate that the informant was telling the truth. See, e. g., United States v. Ross, 424 F. 2d 1016 (4 Cir.), certiorari denied, 400 U. S. 819, 91 S. Ct. 35, 27 L. ed. 2d 46 (1970); United States v. Hood, 422 F. 2d 737 (7 Cir.), certiorari denied, 400 U. S. 820, 91 S. Ct. 38, 27 L. ed. 2d 48 (1970); United States v. Acarino, 408 F. 2d 512 (2 Cir.), certiorari denied, 395 U. S. 961, 89 S. Ct. 2101, 23 L. ed. 2d 746 (1969); United States v. Vigo, 413 F. 2d 691 (5 Cir. 1969); United States v. Singleton, 439 F. 2d 381 (3 Cir. 1971). And see Jones v. United States, 362 U. S. 257, 80 S. Ct. 725, 4 L. ed. 2d 697 (1960), relied on in Harris.

■ The second question raised by defendant—whether the affidavit contained a sufficient showing to justify the inclusion of the "no knock" provision in the warrant—may be considered answered by our decision in State v. Parker, 283 Minn. 127, 166 N. W. 2d 347 (1969). It remains, nevertheless, a most sensitive Fourth Amendment issue, which the United States Supreme Court, as the ultimate authority, may well have occasion more clearly to resolve.

Ker v. California, 374 U. S. 23, 83 S. Ct. 1623, 10 L. ed. 2d 726 (1963), is the foremost "no knock" decision of the United States Supreme Court decided on constitutional grounds. There, police, having probable cause to believe that Ker possessed marijuana illegally, were following his automobile. Ker suddenly made a U-turn in the middle of the block and eluded them. The police, without obtaining a search warrant, went to Ker's apartment. Using a passkey, they entered the apartment without knocking

and announcing their presence and purpose. Once inside they confronted Ker and his wife and observed a brick-shaped package of marijuana in plain sight. The California conviction, based upon that seized evidence, was affirmed. Mr. Justice Clark, writing for four members of the court, concluded that justification for the officers' failure to announce their purpose, otherwise an implicit requirement of the Fourth Amendment, was "uniquely present" because (374 U. S. 40, 83 S. Ct. 1633, 10 L. ed. 2d 742) :

"* * * In addition to the officer's belief that Ker was in possession of narcotics, which could be quickly and easily destroyed, Ker's furtive conduct in eluding them shortly before the arrest was ground for the belief that he might well have been expecting the police."

Mr. Justice Harlan concurred only in the result, being of the opinion that state searches and seizures should not be judged by the Fourth Amendment.

Mr. Justice Brennan, writing the minority opinion for reversal of the conviction, expressed the view that an unannounced entry was constitutionally permissible only in three exceptional circumstances (374 U. S. 47, 83 S. Ct. 1636, 10 L. ed. 2d 746) :

"Even if probable cause exists for the arrest of a person within, the Fourth Amendment is violated by an unannounced police intrusion into a private home, with or without an arrest warrant, except (1) where the persons within already know of the officers' authority and purpose, or (2) where the officers are justifed in the belief that persons within are in imminent peril of bodily harm, or (3) where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted."

Vale v. Louisiana, 399 U. S. 30, 90 S. Ct. 1969, 26 L. ed. 2d 409 (1970), decided subsequent to our decision in Parker, simi-

larly involved a warrantless house search for narcotic drugs.[3] Police officers, having defendant's house under surveillance for the purpose of executing arrest warrants for narcotics offenses, observed the defendant proceed cautiously from the house to an automobile on the street, at which time they observed a highly probable transfer of narcotics from defendant to the occupant of the automobile. As defendant walked quickly toward the house, the officers approached and apprehended and arrested him on the front steps. The officers then made a warrantless search of the house which, at the time of entry, was unoccupied. The Louisiana Supreme Court affirmed defendant's conviction for possession of narcotics on the ground that the search of the house did not violate the Fourth Amendment because it had occurred "in the immediate vicinity of the arrest" and was "substantially contemporaneous therewith." State v. Vale, 252 La. 1056, 1070, 215 So. 2d 811, 816 (1968). The United States Supreme Court reversed, rejecting that view and in effect applied the principle of Chimel v. California, 395 U. S. 752, 89 S. Ct.

---

[3] Sabbath v. United States, 391 U. S. 585, 88 S. Ct. 1755, 20 L. ed. 2d 828 (1968), intervening between Ker v. California, 374 U. S. 23, 83 S. Ct. 1623, 10 L. ed. 2d 726 (1963), and Vale v. Louisiana, 399 U. S. 30, 90 S. Ct. 1969, 26 L. ed. 2d 409 (1970), involved a warrantless search by customs officers who opened an unlocked door to defendant's apartment and entered without announcing their presence and purpose of searching for narcotic drugs. The decision reversing defendant's conviction, however, was based on the interpretation and application of a statute (18 USCA, § 3109), and the government's claim of "exigent circumstances" to excuse compliance with the statute was seemingly only a secondary issue. A footnote to the opinion, indicating that the statute could be construed to permit limited exception, referred to the dissenting opinion of Mr. Justice Brennan in Ker v. California, *supra,* as recognizing "[e]xceptions to any possible constitutional rule relating to announcement and entry." 391 U. S. 591, note 8, 88 S. Ct. 1759, 20 L. ed. 2d 834. This oblique reference cannot be read to mean that the court was adopting the statement of limited exceptions in that prior minority opinion. See, Sonnenreich & Ebner, *No-Knock and Nonsense, an Alleged Constitutional Problem,* 44 St. John's L. Rev. 626, 646.

2034, 23 L. ed. 2d 685 (1969), rather than further explicating Ker v. California, *supra.* The majority opinion adverted to pre-Ker opinions as making "clear that only in 'a few specifically established and well-delineated' situations, *Katz v. United States,* 389 U. S. 347, 357 [88 S. Ct. 507, 514, 19 L. ed. 2d 576, 585 (1967)], may a warrantless search of a dwelling withstand constitutional scrutiny, even though the authorities have probable cause to conduct it." 399 U. S. 34, 90 S. Ct. 1972, 26 L. ed. 2d 413.[4] Noting that "[t]he goods ultimately seized [in the unoccupied house] were not in the process of destruction," the court "decline[d] to hold that an arrest on the street can provide its own 'exigent circumstance' so as to justify a warrantless search of the arrestee's house." 399 U. S. 35, 90 S. Ct. 1972, 26 L. ed. 2d 414.

Courts in other jurisdictions, in the absence of a clearer indication from the United States Supreme Court that the threatened destruction of narcotics constitutes an exception to the knock-and-announce rule only if known to be actually imminent,[5] have divided on the issue. One line of cases, now represented by California in People v. Gastelo, 67 Cal. 2d 586, 63 Cal. Rptr. 10, 432 P. 2d 706 (1967), and People v. De Santiago, 71 Cal. 2d 18, 76 Cal. Rptr. 809, 453 P. 2d 353 (1969), have refused to make blanket exception to prevent the destruction of evidence merely on the basis that narcotics are readily destroyed and that nar-

---

[4] Mr. Justice Black, joined by Mr. Chief Justice Burger, challenged the thought that a warrant was an absolute requirement for a constitutionally proper search. Directly citing Ker v. California, *supra,* they expressed the opinion that the defendant's activity justified the police in believing that delay in order to obtain a warrant risked immediate destruction of evidence by others in the house, the fact that the house was unoccupied being unknown until it was entered.

[5] A note in 62 J. Crim. L. 350, 354, observes that the United States Supreme Court "has never satisfactorily indicated what it considers to be constitutionally permissible exceptions to the requirement of announcing identity and purpose before entry." See, also, Note, 84 Harv. L. Rev. 1465, 1467.

cotics violators are usually on the alert for the first sign of a police officer's presence. In De Santiago, that court said (71 Cal. 2d 28, 76 Cal. Rptr. 816, 453 P. 2d 360) :

"* * * [W]here officers have obtained particular information which leads them to reasonably conclude that the occupants of an apartment or residence have specifically resolved to effect disposal in the event of police intrusion or have made specific preparations in that regard * * *, or when officers prior to entry are able to detect activity from within which leads them to reasonably conclude that the occupants are then engaged in the destruction or concealment of evidence * * *, an unannounced entry may be justified. In these cases, however, compliance with the applicable knock-and-notice provision is excused not because of a blanket rule based on the type of crime involved but because the particular circumstances of the case give rise to a reasonable belief that immediate action is necessary to prevent the destruction of physical evidence."

Reynolds v. State, 46 Ala. App. 77, 238 So. 2d 557, certiorari denied, 286 Ala. 740, 238 So. 2d 560 (1970) ; State v. Mendoza, 104 Ariz. 395, 454 P. 2d 140 (1969) ; and State v. Hatcher, 3 Wash. App. 441, 475 P. 2d 802 (1970), are others in that line of cases. The other line of cases, holding that a blanket rule permitting unannounced entry in narcotics cases does not affront constitutional standards, include People v. Lujan, 174 Colo. 554, 484 P. 2d 1238 (1971); People v. Hartfield, 94 Ill. App. 2d 421, 237 N. E. 2d 193 (1968) ; Henson v. State, 236 Md. 518, 204 A. 2d 516 (1964) ; State v. Johnson, 102 R. I. 344, 230 A. 2d 831 (1967). And see, People v. De Lago, 16 N. Y. 2d 289, 266 N. Y. S. 2d 353, 213 N. E. 2d 659 (1965), certiorari denied, 383 U. S. 963, 86 S. Ct. 1235, 16 L. ed. 2d 305 (1966).[6]

State v. Parker, 283 Minn. 127, 166 N. W. 2d 347 (1969), to which we return, sustained a no-knock house search under cir-

[6] For a third approach, see State v. Gassner, 488 P. 2d 822 (Ore. App. 1971).

cumstances no more compelling than the instant case. The police there searched a combination restaurant-dwelling occupied by the defendant,[7] armed with a search warrant that, unlike the instant case, contained no magistrate-authorized no-knock provision. The police, after knocking at the outer door without response, broke the door with a sledge hammer and, thereupon, entered the dwelling part of the premises without either knocking or announcing their presence and purpose.

We eschewed, in Parker, the adoption of a blanket rule of constitutional exception for narcotics searches, expressing concern for victims of any unauthorized intrusion by police authorities, but at the same time cited with approval the opinion in Henson v. State, 236 Md. 518, 523, 204 A. 2d 516, 519, concerning the "[p]racticalities and exigencies in searches for narcotics" that necessitated "surprise entry" to foreclose the destruction of evidence.[8] We held sufficient for a magistrate's issuance of a no-knock search warrant an affidavit which recited, on the basis of extensive police surveillance of the premises, that persons personally known to the police as narcotic drug users had been observed frequenting the premises, that a reliable informant had personally observed the sale of narcotics on the premises, and that the police believed that a nighttime search was necessary

---

[7] The published opinion inadvertently made no specific mention that the premises consisted of a dwelling, a fact that was undisputed. The front of the building was a small restaurant, but the rear of the building contained a combination kitchen and storeroom, with sleeping facilities, and an adjoining small room with a toilet. Defendant's brief recited, as "crucial" and "uncontradicted" facts, that the searching police "entered a closed door separating the 'restaurant' from the 'living quarters'" and that the police "'raid' was planned and executed with the expectation of people being in the living quarters in the back."

[8] Later, in State v. Linder, 291 Minn. 217, 219, 190 N. W. 2d 91, 93 (1971), we expressed this view of the unique character of narcotics cases: "* * * The activity of someone running, *coupled with common knowledge that narcotics are easily disposed of by flushing them down toilets,* justified the officers' belief that a destruction of evidence was being attempted." (Italics supplied.)

to prevent loss, destruction, or removal of the property. We reversed the order of the trial court suppressing the evidence obtained in the no-knock police search.

The affidavit in the instant case parallels that in Parker.[9] The affidavit does not recite a history of police surveillance of the premises, but it does recite in greater detail than did the affidavit in Parker the first-hand observations of the police informant, including his having observed defendant make sales at the premises and his having seen heroin there within the immediately preceding 48-hour period. It is not without significance that the several kinds of narcotics described in the affidavit corresponded with those discovered in the police search. More significantly, the police statement of belief that "an unannounced entry is necessary" was preceded by a recital of the informant's statement that defendant "is very much aware of the police." This statement of awareness is, to be sure, arguably conclusionary but, in the context of the close relationship of the informant and the defendant disclosed in the affidavit, it is not unrealistic to read it as a shorthand statement of fact, rather than mere assumption, that this particular suspect was resolved immediately to effect disposal if the police presence were discovered.

An unannounced, forcible breaking into a home by police is free from constitutional doubt only where it can be found that the police, at the threshold, had strong reason to believe that the destruction of evidence was imminent, Ker v. California, *supra,* or actually in process, Vale v. Louisiana, *supra.*[10] Much as the

---

[9] State v. Parker, 283 Minn. 127, 166 N. W. 2d 347, was decided in 1969. The search warrant in the instant case, and the affidavit upon which it was based, was issued in 1970.

[10] State v. Linder, 291 Minn. 217, 190 N. W. 2d 91 (1971), exemplifies the clear case of such knowledge at the threshold. Police armed with arrest and search warrants which did not contain no-knock provisions knocked on the suspect's door and shouted "Police." Immediately upon hearing the sound of running footsteps, the police forcibly entered the suspect's home without announcing their purpose of searching for narcotics.

interposition of a magistrate in authorizing a no-knock search precludes comparison with the infamous intrusions upon helpless victims of police-state tyranny at other times and in other places, even so there is an instinctive revulsion at the forcible breaking into a home except in clearly exigent circumstances. Police officers accordingly do well either to employ less drastic alternatives or, even though granted a no-knock search warrant, to make a threshold reappraisal of the actual threat of the destruction of evidence. Of course, the last word on this important issue has not been written.

Affirmed.