## III.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Joseph F. Wieners, Dodge Co. Atty., Robert S. Abdalian, Kristine I. Legler Kaplan, Asst. Co. Attys., Mantorville, for appellant.

Richard L. Jasperson, St. Paul, for respondent.

Heard, considered and decided by PARKER, P.J., and WOZNIAK and NIERENGARTEN, JJ.

## OPINION

PARKER, Judge.

Respondent Richard Gabbert was arrested and charged with possession of a controlled substance and manufacture or possession with intent to distribute a controlled substance. After an omnibus hearing, the trial court granted his motion to suppress evidence seized at his home and ordered the charges against him dismissed, ruling that there had been no probable cause for the issuance of a search warrant. We affirm.

## FACTS

On October 9, 1986, Chief Investigator Curtis Utpadel of the Dodge County Sheriff's Department appeared before a judge to request a search warrant for Gabbert's home in Canisteo Township, Minnesota. Utpadel's request was based on the following information in the affidavit accompanying the warrant request:

> This officer has had an opportunity to speak with Sgt. Michael Commerford of the Dakota County Sheriff's and Detective Bob Dissell of the Goodhue County Sheriff's office. This officer has learned the following facts. Approximately 4 months ago Sgt. Commerford spoke with an officer of the DEA in reference to Barry Nei. The officer whose name he cannot recall stated they had arrested some people in Texas for growing marijuana and during their investigation, they had a pen register which records all phone numbers on the suspect's phone. There were calls placed to Barry Nei in Hastings. Barry supposedly instructed them on how to grow the marijuana.
>
> On 9–5–86 a search warrant was signed and executed on Barry Nei's residence in Zumbrota by the Goodhue County Sheriffs. Found in the basement of the residence were numerous marijuana plants. The set up for growing was hooked up to

a timing system. On 9-23-86 complaints were signed charging Barry with 3 felony counts involving the growing of the marijuana in Zumbrota. On 9-6-86 a search warrant was executed by the Dakota County Sheriff's Office on Barry Nei's residence in Hastings. Found in the residence were two electronic scales, bulbs matching the bulbs in Zumbrota, other articles relating to the marijuana growing and eleven marijuana plants. Charges are pending in Dakota County. I have learned from Sgt. Commerford that he received a call from an individual. This person asked why they did not arrest Richard Gabbert when they arrested Barry Nei. [T]his person stated that Richard Gabbert is a good friend of Barry Nei's and has the same set up as Barry did for growing marijuana. The caller stated Richard has five areas in Goodhue County where he is growing it. According to Sgt. Commerford, Barry Nei and Richard Gabbert grew up together in Hastings, Minn. On September 24, 1986, Carver County Deputy Sheriff Larry Wittsack executed a search warrant signed by District Judge Mitchell on September 22nd upon the United Telephone System's office in Chaska, Minn. The search warrant authorized the search for records of Barry Nei's telephone (area code 612-437-5923) long distance telephone call records. Those records indicate a number of calls have been placed from Barry Nei's telephone to that of Richard Gabbert (area code 507-365-8696).

With the information received from Sgt. Commerford and Det. Dissell, I checked the records and found that Richard Walter Gabbert does in fact own a home located on five acres in Dodge County south of Kasson, Mn. on County Road 6. The telephone number at that residence is 507-365-8696. Sgt. Commerford has advised me that Gabbert has another residence in Hastings, Minn.

I have driven past Gabbert's Dodge County residence, and while at times I have seen vehicles there, the residence does not appear to be lived-in permanently.

I have obtained records from the Power Company, Peoples Cooperative Electric power company which indicates the electrical usage per month for the last 21 months is 2080 Kilowatt hours per month. I have learned that the average electrical consumption for a family of four is 1200 Kilowatt hours per month. Gabbert's average use of 2080 Kilowatt hours per month is similar to the per month average of the Barry Nei property in Zumbrota, Minn., where a search warrant was executed and marijuana plants were found growing as referred to earlier in this affidavit.

From the past experience and training I have learned that drug dealers frequently use vehicles to transport, store and/or conceal their contraband. I therefore request authorization to search motor vehicles found on the premises at the time of the warrant's execution.

The warrant was signed and executed that same day. Among the items discovered and seized were approximately 40 marijuana plants and various drug paraphernalia. Gabbert was arrested and charged with possession of a controlled substance in violation of Minn.Stat. §§ 152.09, subd. 1(2); 152.15, subd. 2(2) (1986), and manufacture or possession with intent to distribute a controlled substance in violation of Minn. Stat. §§ 152.09, subd. 1(1); 152.15, subd. 1(2) (1986).

At an omnibus hearing Gabbert moved to suppress the evidence obtained during the search on the ground that the warrant was not supported by probable cause. The trial court granted his motion, ordering the evidence suppressed, and ordered the charges against Gabbert dismissed. The state appeals.

## ISSUE

Did the facts alleged in the affidavit establish probable cause for the issuance of the search warrant?

## DISCUSSION

The Constitutions of both the United States and Minnesota protect citizens from

unreasonable searches and seizures. *See* U.S.Const. amend. IV; Minn. Const. art. I, § 10. Except under extenuating circumstances, a search is valid only if it is conducted pursuant to a valid search warrant. Minn.Stat. § 626.08 (1986) provides that "[a] search warrant cannot be issued but upon probable cause, supported by affidavit."

The presence of probable cause is to be determined under a "totality of the circumstances" test:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)).

■ "[G]reat deference must be given to the issuing judge's determination of probable cause." *State v. Valento*, 405 N.W.2d 914, 918 (Minn.Ct.App.1987). "Deference to the magistrate, however, is not boundless." *United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984).

> Even if [a] warrant application [is] supported by more than a 'bare bones' affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant [is] invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances.

*Id.* at 915, 104 S.Ct. at 3416.

■ Here, the affidavit recited an anonymous phone call implicating Gabbert in drug-related activity and other facts that allegedly corroborated that phone call. In judging the probative value of the anonymous phone call, we must look first to the credibility of the informant. The state argues that the police officers had spoken to the informant at least once before and that it is therefore reasonable to assume that these officers had found the informant to be credible. At the omnibus hearing, however, Investigator Utpadel testified that he did not know whether the informant was reliable or not. More importantly, the issuing judge had no way of knowing whether the police had previously spoken to the informant, because there was no such allegation in the affidavit. When determining the existence of probable cause, the trial court or reviewing court "is restricted to consider only the information presented at the time of the application for the search warrant." *State v. Labarre*, 292 Minn. 228, 233, 195 N.W.2d 435, 439 (1972).

■ The state also claims the informant's credibility could be presumed under the "first-time citizen informer" rule. Under that rule, the credibility of someone "who is not involved in the criminal underworld and who has no track record as a police informant" is presumed. *State v. Siegfried*, 274 N.W.2d 113, 115 (Minn.1978). Here, as in *Siegfried*, "the affidavit did not contain an averment that the informant was not part of the criminal milieu." *Id.* Because the issuing judge could not have known whether the informant was a reliable private citizen or a member of the "criminal underworld," the first-time citizen informer rule does not apply.

■ The state next contends the informant's credibility was proved by the police officers' subsequent corroboration of the informant's information. However, the brunt of the information provided by the caller was actually disproved by the officers' subsequent investigation. According to the affidavit, the caller stated that Gabbert was growing marijuana in "five *areas* in *Goodhue* County." In fact, Gabbert lived on one area, comprised of five *acres*, in *Dodge* County. Although the state claims the word "areas" was mistyped on the affidavit and was supposed to have been "acres," there is no way the issuing judge could have known of this alleged clerical error. As stated above, the existence of probable cause must be determined only from the evidence placed before the

issuing judge, and he was not apprised of the error before issuing the warrant.

The only subsequently verified information provided by the caller was the fact that Nei and Gabbert were friends. However, this information could have been obtained from any one of a number of sources and therefore does not support the informant's credibility. *Cf. Gates*, 462 U.S. at 245, 103 S.Ct. at 2335 (independent corroboration of informant's highly detailed information proved that he had access to inside information and was therefore credible).

The state next contends the anonymous tip was corroborated by additional information independently gathered by the police. This assertion depends primarily on power company records that showed an inordinate amount of electrical usage at Gabbert's home. The search warrant affidavit noted that Gabbert's average electric power consumption was 2080 kilowatt hours per month for the last 18 months, as compared to an average consumption of 1200 kilowatt hours per month. However, Gabbert's monthly consumption averaged only 760 kilowatt hours during the six months immediately preceding his arrest. The issuing judge was never told that Gabbert's most recent electrical consumption was actually *below* average.

This misleading characterization of the electricity records nullified the issuing judge's finding of probable cause. *See State v. Doyle*, 336 N.W.2d 247, 250 (Minn. 1983) (if it is established that the affiant deliberately falsified or recklessly disregarded the truth in his affidavit, then the trial court should set aside the false statements (or supply the omissions) and decide whether the affidavit still establishes probable cause). Although it is natural for a police officer to characterize evidence in a fashion most likely to result in the issuance of a search warrant, the officer here distorted statistics and misled the issuing judge. To tolerate such practice would severely undermine the probable cause requirement.

Because the anonymous tipster's information was insufficiently corroborated, the issuing judge did not have probable cause to issue the search warrant. As the supreme court stated in a similar case,

> [w]e find no authority * * * which holds that "a bald and unilluminating assertion of suspicion" by the police based on information from an informer, without more, will provide probable cause to justify search and seizure. Where police have no idea who their informant is or how he received his information or on what his information is based, they cannot know whether the informant is credible or his information reliable, and, therefore, they can have no probable cause.

*State v. Cvar*, 293 Minn. 439, 441, 196 N.W.2d 624, 626 (1972) (footnote omitted) (finding insufficient probable cause for warrantless search).

The state cites two cases in which the supreme court found sufficient corroborative evidence to support an informant's tip, but in each case the informant was specifically found to be credible. In *State v. Lindquist*, 295 Minn. 398, 205 N.W.2d 333 (1973), the informant voluntarily came forward and identified herself to the police. Because the informant knew she could be arrested for making a false report, the court determined that she was likely to be telling the truth. *Id.* at 400, 205 N.W.2d at 335. Similarly, in *State v. Daniels*, 294 Minn. 323, 329, 200 N.W.2d 403, 406–07 (1972), the informant was known to be credible because his previous tips had led to arrests.

■ The state also urges the court to adopt the "good faith exception" to the exclusionary rule and to admit the evidence on that basis. The United States Supreme Court established the good-faith exception in *Leon*, holding that the fourth amendment exclusionary rule should not be applied to bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid. *See Leon*, 468 U.S. at 919–21, 104 S.Ct. at 3418–19.

It is axiomatic that a state may interpret its own bill of rights more expansively than

the United States Supreme Court has interpreted the federal Bill of Rights. *See Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980) (states are free to find more expansive safeguards in their own constitutions than those conferred by the federal Constitution); *O'Connor v. Johnson*, 287 N.W.2d 400, 405 (Minn.1979) (Minnesota Constitution may afford Minnesota citizens greater protection against unreasonable searches and seizures than the federal Constitution). Therefore, in *State v. Herbst*, 395 N.W.2d 399, 404 (Minn.Ct. App.1986), this court specifically declined to adopt the *Leon* good-faith exception, noting that it was not an appropriate case in which to make "such a dramatic change in the interpretation of the Minnesota Constitution." *See also Wiley*, 366 N.W.2d at 269 n. 2 (declining to reach the good-faith exception issue).

Even if the good-faith exception were adopted in Minnesota, this case would not come within its scope, because the officer's selective use of the electrical consumption records was meant to mislead the issuing judge. "Suppression * * * remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421.

## DECISION

The information received from the anonymous informant was insufficiently corroborated to provide probable cause for the issuance of a search warrant.

Affirmed.

Court of Appeals of Minnesota.

Aug. 25, 1987.