STATE of Minnesota, Appellant,

v.

David Robert BENSON, Respondent (C9–91–1482),

Mitchell Allan Berger, Respondent (C0–91–1483),

Stephen Homer McIntyre, Respondent (C2–91–1484).

Nos. C9–91–1482 to C2–91–1484.

Court of Appeals of Minnesota.

April 14, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Richard Arney, Washington County Atty., John M. Fristik, Asst. County Atty., Stillwater, for appellant.

Louis E. Torinus, Stillwater, for David Robert Benson.

Harry E. Eliason, So. St. Paul, for Mitchell Allan Berger.

Paul W. Rogosheske, Thuet, Pugh & Rogosheske, So. St. Paul, for Stephen Homer McIntyre.

Considered and decided by FORSBERG, P.J., and CRIPPEN and DAVIES, JJ.

## OPINION

CRIPPEN, Judge.

Premised on a state public safety officer's application, a trial judge issued two March 1991 orders authorizing the installation of "pen registers."[1] Information re-

---

1. Minn.Stat. §§ 626A.36–.38 (1990) establish a procedure for judicial authorization of the installation and use of a pen register, trap and trace, or mobile tracking device. A "pen register" is

> a device that records or decodes electronic or other impulses that identify the number dialed or otherwise transmitted on the telephone line to which the device is attached.

Minn.Stat. § 626A.39, subd. 3 (1990). A "trap and trace device" is

> a device which captures the incoming electronic or other impulses that identify the originating number of an instrument or device from which a wire or electronic communication was transmitted.

Minn.Stat. § 626A.39, subd. 4 (1990). Also covered is a "mobile tracking device," an electrical or mechanical device which "permits the track-

ceived through use of the pen registers led at least in part to the issuance of a search warrant in April 1991. Subsequently, the trial court suppressed evidence obtained through execution of the search warrant, premised on the conclusion that the applications for the pen register installations contained insufficient information. On the state's appeal from this suppression order, we reverse.

## FACTS

In March 1991, William Thompson, a special agent with the Minnesota Department of Public Safety, reported that he "received information via a confidential source that an illegal sports bookmaking operation" was being conducted over two Mahtomedi telephone lines. Based on this information, Thompson obtained orders to have U.S. West Communications assist in the installation of pen registers on those numbers.

Between March 15, 1991 and April 10, 1991, the pen registers recorded telephone activity which would be consistent with a sports book. On April 14, 1991, Thompson obtained a signed search warrant based on the information received from the pen registers. In the warrant application, Thompson stated that the report of an illegal operation came from an "unwitting informant." Although not found in the pen register order applications, the search warrant application said the informant had previously furnished information leading to at least four bookmaking convictions. The subsequent search yielded items relating to gambling such as cash, gambling receipts, address books, water soluble paper and line sheets.

Respondents David Robert Benson, Mitchell Allan Berger, and Stephen Homer McIntyre were charged with one count each of Felony Sports Bookmaking in violation of Minn.Stat. §§ 609.76, subd. 2, 609.-75, subd. 7, and 609.05 (1990). At an omnibus hearing, the trial court determined that the pen register orders were based on insufficient information and that since the

pen register orders were improper, the evidence obtained pursuant to the search warrant should be suppressed. On the state's appeal, the parties agree that the suppression order critically impacted the prosecution. *State v. Ronnebaum,* 449 N.W.2d 722, 723–24 (Minn.1990); *State v. Joon Kyu Kim,* 398 N.W.2d 544, 547 (Minn. 1987).

## ISSUES

1. Did the trial court clearly err by holding invalid prior trial court orders authorizing the installation and use of pen registers?

2. Was evidence from a subsequent search admissible either because the pen register violation was a mere technical error or because the search warrant application contained independent, adequate disclosure to show probable cause for the search?

## ANALYSIS

### 1. Pen register process

■ Agent Thompson's applications for authority to install pen registers described an ongoing criminal investigation and stated that information likely to be obtained from a pen register would be "relevant" to this investigation and "concern" the offenses being investigated. It is evident Thompson sought evidence to show an illegal bookmaking operation, but his expectation in this regard was premised on an informant's report without identifying the informant or otherwise demonstrating that the report was reliable. Because the application contained insufficient disclosures to demonstrate any reason to believe incriminating evidence would be found through the installation, the trial court determined that the application was defective.

■ The trial court's decision reflects a proper interpretation of Minn.Stat. §§ 626A.36–.37, as amended in 1989. Under Minn.Stat. § 626A.36, the applicant must provide the court with

---

ing of the movement of a person or object." Minn.Stat. § 626A.39, subd. 5 (1990). Unlike a wiretap, these devices do not record the actual

conversations occurring on a telephone line. *See* Minn.Stat. § 626A.01, subd. 5 (1990).

a statement of the facts and circumstances relied upon by the applicant to justify the applicant's belief that an order should be issued.

Minn.Stat. § 626A.36, subd. 2(2), *amended by* 1989 Minn. Laws ch. 336, art. 1, § 9. Prior to 1989, section 626A.36 merely required the applicant to make a "certification" that the results of the search would be relevant to an ongoing criminal investigation. Although the current statute provides the applicant must show some cause (facts justifying belief that installation should occur) before an order will be issued, nothing in the statute establishes a standard for the issuance of an order. This standard is set forth in Minn.Stat. § 626A.37 (1990), a declaration of the trial court's authority.

Prior to 1989, section 626A.37 coincided with the previous version of section 626A.36, providing that the order should be issued if a certification statement under section 626A.36 had been filed. Minn.Stat. § 626A.37, subd. 1 (1988). As amended in 1989, however, the court may issue an order for the installation and use of a pen register only if it finds that it has received information establishing "reason to believe" that the results of the use of the pen register will be relevant to an ongoing criminal investigation. Minn.Stat. § 626A.37, subd. 1 (1990).

How does an applicant demonstrate the requisite "reason to believe" a pen register order will produce information "relevant" to an ongoing criminal investigation? As the trial court evidently concluded, relevancy in this context means the evidence is probative of criminal activity. To satisfy the statute, the officer must state facts or circumstances which give the court some articulable "reason to believe" that incriminating evidence will be obtained through the installation and use of a pen register.

As respondents contend, such construction is necessary to give the statute "practical significance in safeguarding the public from unwarranted intrusion from law enforcement." This interpretation is consistent with the clear intent of the legislature in 1989 to establish limits on the use of pen register devices. *See Hearing on S.F. No. 1237 Before the Subcommittee of the Senate Judiciary Committee on Privacy* (Apr. 12, 1989) (reason for amendment was to give courts more authority to examine pen register order applications).

We have considered and rejected alternative constructions of this statute. Specifically, we have asked whether relevance might be read to mean the applicant need only show that any evidence received through the use of a pen register, either exonerating or incriminating, would be germane to an ongoing criminal investigation. This construction leads to an absurd result which we are to avoid. *See* Minn.Stat. § 645.17(1) (1990) (legislature does not intend results that are absurd). So construed, the court standard would be no standard at all. The mere showing that an officer was pursuing a criminal investigation would entitle the officer to a pen register order. The order would be appropriate even though the officer had no knowledge regarding the results of the pen register's use. Similarly, the officer could obtain an order premised on a stated belief the evidence would exonerate prospective defendants or show only that no incriminating pen register information existed. Employing this construction of the statute, the trial court's "reason to believe" is made a meaningless assertion that an officer engaged in an investigation wants an intrusive order. The absurdity and threat to privacy in this construction of the statute convinces us that the statutory mandate for a showing that expected results be relevant constitutes a requirement to show some articulable reason to believe probative incriminating evidence is likely to be found.

In reaching a conclusion on the trial court's holding, we have considered but find unconvincing the policy argument that pen register orders constitute a minimal intrusion to privacy of persons in their homes. We reiterate the clear intent of the legislature in 1989 to limit access to information on use of private telephones. We also observe, underscoring the importance of the intrusion at issue, that the statute

contains no provision requiring timely destruction of records kept on information obtained through use of a pen register or a related device. Moreover, although the statute permits judicial decisions to disclose sealed records, it states no standards governing those decisions. Finally, we note that the standard on pen register orders also governs orders on tracing devices and mobile tracking devices, some of which may be highly intrusive.[2]

We have also considered the policy question whether adequate protection from unwarranted intrusions can be achieved without the showing of reason demanded by the statute and the trial court. We conclude, however, paralleling the evident conviction of the legislature that the statute would permit random choices to use pen registers if authorization is licensed without a showing of some articulable reason to believe a pen register will produce incriminating information. Ultimately any effort to examine this policy question must address the "reason to believe" clause of Minn.Stat. § 626A.37; authorization orders without a showing of some reason to expect recovery of incriminating information contradicts the express will of the legislature.

No doubt our interpretation of these state statutes extends privacy rights of telephone users beyond those recognized by the Supreme Court in *Smith v. Maryland*, 442 U.S. 735, 742–43, 99 S.Ct. 2577, 2581, 61 L.Ed.2d 220 (1979) (no reasonable expectation of privacy in telephone numbers one dials). *Cf. id.* at 750–52, 99 S.Ct. at 2585–86 (Marshall, J., dissenting) ("in a free and open society" citizens "should be entitled to assume that the numbers [they dial] in the privacy of [their] home will be recorded, if at all, solely for the phone company's business purposes").[3] We observe, however, that our holding is not premised on either the Minnesota or Federal Constitutions. In the absence of judicial proceedings on the state constitutional issue, it rests with the legislature to make a determination that the standard it set in 1989 should be preserved, restricted or expanded.

The pen register order applications of Officer Thompson fail to furnish information giving the issuing court any reason to believe the orders would produce incriminating evidence. We need not precisely determine the minimum necessary showing by an applicant, but conclude only that a meaningless showing is made on the mere declaration that an officer is seeking to prove an accusation from "a confidential source."[4]

### 2. Technical error doctrine

◼ The trial court concluded that the erroneous pen register authorizations required that it suppress the fruits of a subsequent search. We disagree.

We first consider that since the application for the search warrant included additional information about this confidential source,[5] the failure to include this addition-

---

2. *See supra* note 1. It may be significant that 1989 limits on orders under Minn.Stat. § 626A.37 accompanied amendment of the law to include mobile tracking devices among those governed by the statute.

3. *See also People v. Sporleder,* 666 P.2d 135, 139–44 (Colo.1983) (pen registers are subject to constitutional limitations under Colorado Constitution); *Commonwealth v. Beauford,* 327 Pa.Super. 253, 260–70, 475 A.2d 783, 786–92 (1984) (use of pen register is a search under Pennsylvania Constitution), *appeal dismissed,* 508 Pa. 319, 496 A.2d 1143 (1985). In the absence of an assertion that respondents' state constitutional rights have been abrogated, we decline to reach the constitutional issue. *See Warner v. State,* 309 Minn. 333, 340–41, 244 N.W.2d 640, 645 (1976) (refusing to reach constitutional issue not argued at trial or on appeal). We note that the trial court's suppression order was premised

on the requirements under the statutory scheme; the court did not suggest any constitutional limits on the pen register orders.

4. The state contends the trial court's decision was tantamount to imposition of the "probable cause" standard which shapes constitutional law on searches and seizures. We conclude that the standard dictated by Minn.Stat. § 626A.37, and employed by the trial court, requires a showing less than probable cause, and it goes beyond the decision here to more precisely define this standard.

5. This confidential source was further described in the application for the search warrant as an "unwitting informant" who had "provided information" to the officer in the past which "has resulted in the arrest and convictions of at least four individuals conducting illegal sports bookmaking activities."

al information in the pen register applications might constitute a technical error which should not be given dispositive effect. *See State v. Smith*, 367 N.W.2d 497, 504–05 (Minn.1985) (suppression not required of all evidence seized in searches constituting or arising from a violation of statute if violation was technical and "did not subvert the basic purpose of the statute"); *State v. Lien*, 265 N.W.2d 833, 840–41 (Minn.1978) (technical violation of statutory prohibition of nighttime execution of search warrant absent court determination of necessity did not require suppression seized in otherwise lawful search). We conclude that the statutory violation in this case touches on the constitutional right to privacy which the legislature clearly intended to protect by its amendments to the pen register statute in 1989. As a result, the violation of Minn.Stat. § 626A.37 is a substantial and not merely technical violation.

A conclusion that a mere technical error occurred might also be compelled where there is evidence that the pen register applicant had supporting information in addition to what was shown in his application. *See State v. Lindsey*, 473 N.W.2d 857, 863–64 (Minn.1991) (where officer did not make adequate showing of need for telephonic search warrant, suppression was not required since facts not recited to judge established need). However, no attempt was made here to show that the officer knew more about his source than he put into his pen register applications.

3. Independent basis for search warrant

▪ Finally, we have examined the search warrant process to determine whether the ultimate search was justified because there was sufficient information in the warrant application to demonstrate probable cause independent of the information provided through the execution of the invalid pen register orders. We conclude this showing of cause occurred and that the trial court erred in suppressing the fruits of the search. *See McCray v. Illinois*, 386 U.S. 300, 304–13, 87 S.Ct. 1056, 1059–63, 18 L.Ed.2d 62 (1967) (credibility of unidentified informant established by officer's testimo-

ny that informant had proven reliable in the past); *State v. Daniels*, 294 Minn. 323, 329, 200 N.W.2d 403, 406–07 (1972) (credibility sufficiently established by statement that informant's information "recently resulted in narcotic arrests and convictions"); *see also State v. Lozar*, 458 N.W.2d 434, 438 (Minn.App.1990) (illegal search did not invalidate subsequent warrant where warrant was supported by probable cause from an independent source), *pet. for rev. denied* (Minn. Sept. 28, 1990). Under the doctrine of these decisions, the warrant application in this case was rendered adequate by a showing that the unnamed informant had provided information to the applicant in the past which had "resulted in the arrest and convictions of at least four individuals conducting illegal sports bookmaking activities."

## DECISION

We hold that the pen register orders were not validly issued under Minn.Stat. § 626A.37. We must nevertheless reverse the trial court's order suppressing evidence obtained pursuant to a search warrant based partly on information received from use of the pen registers, since there was a sufficient showing of probable cause in the warrant application independent of that information.

Reversed.

DAVIES, Judge (concurring specially).

I concur in the result, but respectfully offer a different analysis.

The pen register statute, Minn.Stat. § 626A.36, subd. 2, is designed to balance the privacy interests of the public against the investigatory needs of the police. I think a balance, consistent with the act, is met by permitting use of pen register records in this case independent of the application for a search warrant relied on by the majority.

Obtaining the information provided by a pen register intrudes minimally into the subject's privacy interest. The substance of telephone conversations is not revealed, only the numbers called. If those numbers suggest criminal involvement, the police

can pursue the matter with warrants for searches and telephone taps. If the pen register information suggests no involvement, this will, in many cases, turn the police to other suspects, thus contributing ultimately to the privacy interests of the person involved. It also saves police resources that would otherwise be wasted on a wild goose chase.

The objective of the legislature passing the pen register act in 1988 and amending it in 1989 was to avoid random access to pen register information. Once the police officer in charge of the investigation establishes that a specific criminal investigation is involved and that facts and circumstances justify use of the pen register on the targeted phone, the public is protected from random checks by pen register.[1]

Reading the specific statutory language is helpful. In 1989 the legislature made the following amendment, shown by underlining:

> An investigative or law enforcement officer <u>with responsibility for an ongoing criminal investigation</u> may make application.

1989 Minn.Laws ch. 336, art. 1, § 9, subd. 1. The effect of this change was to require that the *responsible* investigating officer make application to the court. That requirement was satisfied in this case. The next amended subdivision required that the application include:

> (1) the identity of the law enforcement or investigative officer making the application<u>, the identity of any other officer or employee authorizing or directing the application,</u> and the identity of the law enforcement agency conducting the investigation; and

> (2) ~~a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency~~ <u>a statement of the facts and circumstances relied upon by the applicant to justify the applicant's belief that an order should be issued</u>.

---

**1.** If the legislation required the destruction of the pen register information obtained when the information proved irrelevant, rather than just

1989 Minn.Laws ch. 336, art. 1, § 9, subd. 2. Paragraph (1) was clearly satisfied here, and paragraph (2) was satisfied, in my view, with the statement in the application that the

> applicant has received information via a confidential source, that an illegal sports bookmaking operation is being conducted over the telephone lines of [numbers].

That should be sufficient to satisfy the statutory requirement.

The majority comes close to requiring a "probable cause" showing to implement pen register access. Nowhere in the legislation do the words "probable cause" appear. The legislature meant something less. It meant, in my view, the kind of showing that was made in this case.

sealing the record, privacy interests would be even better protected.