STATE of Minnesota, Appellant,

v.

**John Wallace DOYLE, Respondent.**

**No. C7–83–415.**

Supreme Court of Minnesota.

July 8, 1983.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Raymond F. Schmitz, County Atty., and Michael S. Husby, Asst. County Atty., Rochester, for appellant.

Peterson & Stephenson and Mark G. Stephenson, Rochester, for respondent.

AMDAHL, Chief Justice.

This is an appeal by the state, pursuant to Minn.R.Crim.P. 29.03, subd. 1, from an order of the district court suppressing evidence on fourth amendment grounds and dismissing the prosecution of defendant for possessing cocaine with intent to sell and for simple possession of cocaine, hashish and LSD. The evidence in question was found in a warranted search of the apartment in which defendant was residing, an apartment that was leased by a friend of his. The trial court suppressed the evidence on the ground that the affidavit on which the search warrant application was based contained material misrepresentations of fact and that without those misstatements the affidavit did not contain sufficient information to establish probable cause to believe that controlled substances would be found in the apartment. We affirm.

Rochester police apparently suspected for a number of years that defendant was dealing in controlled substances. Sometime in May or June of 1982 they received information from a confidential source that defendant was trafficking in cocaine. Through random surveillance they saw defendant in the company of other known or suspected cocaine dealers at a bar in Rochester. At various times they also saw known or suspected drug users enter the apartment building in which defendant resided, stay for a short period of time, and then leave.

The street level of the building is occupied by a bookstore. The second story of the building contains four apartments,

numbered 1 through 4. Access to the second floor is by an interior stairway from the front street level door or a stairway in the back that leads to a common back porch that has a roof but is not enclosed. All four apartments are to the north of the hallway. Apartments 1 and 3 face onto the street and Apartments 2 and 4 face onto the back alley. Apartment 4 can be entered from the back porch as well as from a vestibule off a second-story hallway that runs from the front of the building to the back porch. Apartment 3 can be entered from that same vestibule. Apartment 1 can be entered only from the hallway. Apartment 2 can be entered from the hallway or from the back porch. When the police had the building under surveillance and saw someone going in, they could not tell which of the four apartments was visited.

On the afternoon of July 12, 1982, police investigated a complaint that marijuana plants could be seen growing next to the window of one of the apartments above the bookstore. Standing across the street from the front or western end of the building and using 8 × 40 binoculars, the officers could see plants inside Apartment 3. The plants were in two white plastic pails, two beer cases and one cardboard box. Based on their experience, the officers concluded that the plants were marijuana.

The officers then talked with a person named Dave (last name unknown), who managed the bookstore and had something to do with the apartments. He stated that the apartment in question was Apartment 3 and that it was rented by defendant and defendant's mother. He also stated that defendant frequently stayed with a woman named Cady, the lessee of Apartment 4, which is the apartment in the northeast part of the upstairs. The officers, however, had seen defendant on numerous occasions with a woman, named Schultz, and did not believe that defendant was living with Ms. Cady at that time. Dave also told them that he thought Apartment 1 was vacant and that he thought Apartment 2 was rented to a so-called "escort service."

The following morning the officers drove past the building and saw that the plants were no longer in the window of Apartment 3. The officers then went to the roof of a building across the street from the rear or east side of the apartment building and, apparently using binoculars again, saw the plants on the back porch. The plants apparently were the same plants and were in the same containers as the plants they had seen the previous afternoon in the window of Apartment 3.

On July 14, an officer applied for warrants to search Apartment 3 and the person of defendant and Apartment 4 and the person of Cady. The affidavits in support of the applications were identical. They stated:

Affiant is a Narcotics Officer with the Rochester Police Department. At approximately 3:30 p.m. on July 12, 1982, affiant and Police Officer Roberts investigated a complaint of marijuana plants growing in an apartment above the Wabasha Book Store. From across the street, the officers were able to see plants growing in two white plastic pails and two Michelob cases and one brown cardboard box. Using an 8 × 40 binoculars, the officers observed the plants and based on their previous experience, both believed them to be marijuana plants. According to a person named Dave (last name unknown) who is the manager of the Wabasha Book Store and in charge of the apartments above the store, said apartment is number 3 and is rented by Ann and John Doyle.

On July 13, 1982, affiant drove past the Wabasha Book Store at approximately 8:20 a.m. and noticed that the plants had been removed from the windows in the apartment above the store. From affiant's previous experience and his familiarity with the area, affiant was aware of a back stairway and porch on this building which he has observed John Doyle using frequently. Affiant also learned from the Wabasha Book Store/apartment manager during their conversation on July 12 and a subsequent conversation with Officer Roberts on July 13 that John

Doyle frequently stays with a girlfriend, K. Cady, who rents the back upstairs apartment, # 4. At approximately 10:50 a.m. affiant went on the roof of the Riverside Building where he was able to see the porch for Apartment # 4 and observed the same containers and plants that he had observed in the windows of Apartment # 3 on July 12.

Additionally, it is known by affiant that John Doyle has been dealing in controlled substances for years and information has recently been received through a proven reliable, confidential informant who has provided information to the police in the past which has been determined to be reliable and which has proven helpful to result in criminal arrests and convictions that John Doyle has been conducting trafficing cocaine. Through random surveillances of the Lantern Lounge and John Doyle's apartment building, he has been seen by Law Enforcement Officers with other known cocaine dealers. The monitoring of the ingress and egress of persons visiting the apartment complex has revealed several known drug users coming to the apartments and staying for only a very short period of time.

The police executed the warrants around noon on the 14th. They proceeded down the interior hallway to the vestibule and knocked on the doors to Apartments 3 and 4. Defendant's mother answered the door to Apartment 3, but no one answered the door to Apartment 4. After a short delay, defendant's mother produced a key to Apartment 4. When the officers opened the door they found defendant coming from the bathroom and Ms. Schultz in bed.

The officers found the marijuana plants in Apartment 3 by the window, which is where they had first seen the plants on the 12th. In Apartment 4 they found the items forming the basis of this prosecution.

During defense counsel's cross-examination of the affiant at the reopened omnibus hearing, the affiant admitted that he had not informed the magistrate of his doubts as to the total accuracy of Dave's statements relating to the tenancy of Apartment 4 and defendant's relationship with that person. It also came out at the hearing that the porch, which the affiant had represented as being "the porch for Apartment 4," was in fact a common porch. Ms. Cady testified that she had lived with defendant in Apartment 4 until April of 1980, when she moved out of town. Defendant testified that Ms. Schultz and he had been living together in Apartment 4 for about 1½ years. He testified that his mother was the tenant of Apartment 3 and that his 13-year-old daughter, who was home for the summer, was staying with her. He testified that some "guys" were living in Apartment 1 and that a number of women from the "escort service" were staying in Apartment 2.

The district court concluded that the affiant deliberately or recklessly misrepresented the facts bearing on the tenancy of Apartment 4 and the relationship of the porch to that apartment. The court concluded that the misrepresentations were material and that, setting those statements to the side, the remaining information was insufficient to establish probable cause to believe that there were controlled substances in Apartment 4.

▮ The ultimate issue on appeal in this case is whether the affidavit contained sufficient reliable facts to support the magistrate's determination that there was probable cause to believe that controlled substances would be found in Apartment 4. Our starting point, however, is the requirement that the magistrate make an independent determination of probable cause. That requirement underlies the rule that the affiant must provide the magistrate with sufficient *factual* information regarding the circumstances which the affiant believes establish probable cause. As stated in *Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964),[1] if

---

1. The *Aguilar* case also adopted what has become known as the "two-pronged *Aguilar* test"

for evaluating affidavits based on information obtained from informants. *See, e.g., State v.*

the magistrate is to "perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police," then the magistrate must be provided with more than the mere opinions, conclusions or beliefs of the affiant. The requirement that the magistrate make an independent determination of probable cause also underlies the decision in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), allowing attacks on facially-sufficient affidavits, because if a defendant was totally barred from attacking the accuracy of an officer's affidavit, police would be able to intentionally misrepresent the facts in order to obtain a search warrant. *Franks*—which we anticipated in our opinion in *State v. Causey,* 257 N.W.2d 288 (Minn.1977)—held that if it is established that the affiant deliberately falsified or recklessly disregarded the truth in his affidavit, then the trial court should set aside the false statements (or supply the omissions[2]) and decide whether the affidavit still establishes probable cause. 438 U.S. at 155–56, 98 S.Ct. at 2676.

In this case the district court decided that the affiant deliberately falsified or recklessly disregarded the truth by (a) omitting information that the police had seen defendant with Natalie Schultz on a number of occasions and therefore did not believe that the information from Dave was fully accurate and (b) stating that on July 13 they had seen marijuana plants growing on "the porch for Apartment 4." The district court also decided that the misrepresentations were material.

In addressing the issue of materiality in a case such as this, one must bear in mind that the issue is not probable cause to arrest the defendant or probable cause to believe that he was connected somehow to Apartment 4 but probable cause to believe that controlled substances would be found in a search of Apartment 4. For a full discussion, see 1 W. LaFave, Search and Seizure §§ 3.1(b), 3.7(d) (1978).

Minnesota cases dealing with the issue of probable cause to believe that items will be found in a search of a particular place include *State v. Yaritz,* 287 N.W.2d 13 (Minn. 1979) (in sale-of-contraband case some additional fact is needed to support inference that seller stores contraband at his residence; that was provided by fact that during two controlled buys of drugs from the defendant, the defendant was observed on each occasion going straight from his house to the place where the sales occurred); *State v. Flom,* 285 N.W.2d 476 (Minn.1979) (affidavit established probable cause to believe that stolen goods would be found at the defendant's residence where a large

*Wiberg,* 296 N.W.2d 388, 395 (Minn.1980). Recently, in *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court, complaining that other courts have been too rigid in applying the *Aguilar* test, abandoned the test in favor of the totality-of-the-circumstances analysis that has traditionally informed probable cause determinations. Although abandoning the *Aguilar* test as a rigid test that must be met, the Court noted that the elements under the test—the informant's credibility, reliability and basis of knowledge—are elements that still may usefully illuminate the issue of whether there is probable cause to believe that evidence is located in a particular place. Addressing the concern that its opinion might be misinterpreted as allowing an abdication of the magistrate's duty to independently determine probable cause, the Court stated:

Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued. But when we move beyond the "bare bones" affidavits present in cases such as *Nathanson* [*v. United States,* 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933) ] and *Aguilar* [*v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) ], this area simply does not lend itself to a prescribed set of rules * * *. Instead, the flexible, common-sense [totality-of-the-circumstances] standard * * * better serves the purposes of the Fourth Amendment's probable cause requirement.

—— U.S. at ——, 103 S.Ct. at 2332.

2. *See United States v. Dennis,* 625 F.2d 782 (8th Cir.1980); *People v. Kurland,* 28 Cal.3d 376, 168 Cal.Rptr. 667, 618 P.2d 213 (1980), *cert. denied,* 451 U.S. 987, 101 S.Ct. 2321, 68 L.Ed.2d 844 (1980).

number of items were involved, items were type that could be of enduring utility to the taker, and police knew that defendant had kept at least one of the items himself); *Rosillo v. State,* 278 N.W.2d 747 (Minn.1979) (police, who had probable cause to believe that defendant took $500 in coins, also had probable cause to believe that some of those coins would be found in the search of the defendant's residence because it was unlikely that the defendant would carry all the coins on his person and the normal place that the defendant would keep the coins that he could not carry would be at his residence).

Relevant cases from other jurisdictions include: *State v. Robinette,* 270 N.W.2d 573 (S.D.1978) (observation of marijuana plants in common yard shared by four apartments alone did not give police probable cause to believe that the marijuana was that of defendant, who was one of the tenants, and did not give them probable cause to search defendant's apartment); *Sanders v. State,* 610 P.2d 247 (Okl.Cr.App.1980) (fact that defendant sold drugs near his place of business did not give police probable cause to believe he kept drugs in his residence).

In this case, in the afternoon of July 12 police saw the marijuana plants in the window of Apartment 3, which is on the west side of the building and which is where the sun shines in the afternoon. In the morning of July 13 they saw the plants on the common porch in the rear of the building where the sun shines in the morning. Since Apartment 3 does not have any window to the south or to the east and since the only common area exposed to the sun is on the east, it thus would seem that the most reasonable inference which could be drawn from the police observations alone was that someone connected with Apartment 3 was growing marijuana plants and was moving them to the common porch in the morning in order to take advantage of the sun in the east and moving them back into the apartment in the afternoon to take advantage of the afternoon sun in the west.[3]

The question then becomes whether any other facts known by the affiant and stated in the affidavit reasonably supported the inference that drugs would be found in a search of Apartment 4.

What are the other facts?

(a) First, the affiant stated in the affidavit that he knew that defendant had been dealing in controlled substances for a number of years. The value of this statement in determining probable cause is lessened because it is conclusory and does not provide a clue as to the source of the information or the manner in which the information was obtained.

(b) Second, the affiant stated that he had received information from someone whom he described as a "reliable, confidential informant" who in the past had provided information that proved to be reliable and had resulted in arrests and convictions. That information was that defendant "has been trafficking in cocaine." That information was received by the affiant a month or two earlier. Unfortunately, the affiant did not state how the informant obtained his information.

(c) The affidavit next stated that defendant had been seen by police talking in a bar with people suspected of cocaine trafficking.

(d) Finally, the affidavit stated that police had seen known drug users go into the apartment building and then come out again a short time later. Even assuming that there was a basis for believing that the people in question were drug users, these people did not necessarily visit defendant. Even assuming that they were dealing with defendant, their dealings may have been in Apartment 3, not Apartment 4.

In summary, the information that the police had was not only flimsy and unreliable but most of it simply suggested that defendant was dealing in drugs, not that he

---

**3.** Indeed, this inference is consistent with what we now know, namely, that the plants were in the window in Apartment 3 again when the police executed the warrant shortly after noon on the 14th.

was dealing out of the apartment building. Only the last item of information suggested that any dealing was being done out of the apartment building and that information did not relate to any particular apartment unit in the building or to defendant.

The one item of information that we have yet to consider is the information connecting defendant to Apartment 4. That information was that defendant frequently stayed with a woman named Cady in Apartment 4. One problem with this information is that the police did not believe it. Indeed, they knew that defendant had been going with another woman named Schultz. More importantly, even if we assume that defendant was frequently staying in Apartment 4 with some woman, it does not follow that he was keeping drugs in there.

■ This gets us back to the central issue, whether one can say, after supplying the omissions and correcting the misrepresentations, that the affidavit established probable cause to believe that drugs would be found in a search of Apartment 4. We do not believe that the affidavit established that. The police had probable cause to believe that they would find marijuana plants in Apartment 3. The most that they had with respect to Apartment 4 was information which arguably would have entitled them to a conditional warrant to search it in the event that their search of Apartment 3 did not result in the discovery of the plants. *See, e.g., Albidres v. Superior Court,* 12 Cal.App.3d 575, 90 Cal.Rptr. 682 (1970) (suggesting the use of conditional warrants in certain situations). *See also* 1 W. LaFave, Search and Seizure § 3.7(c) (1978). That is, the information that the police had suggested that it was probable that the plants were connected with Apartment 3 but that if the police did not find the plants in Apartment 3 then they probably would find them in Apartment 4, where they believed defendant, who they suspected of drug dealing, frequently stayed. But the affidavit did not establish probable cause that would justify a simultaneous search of both apartments.

The state argues that there should be a good-faith exception to the exclusionary rule in warrant cases, an issue which the United States Supreme Court refused to address in its recent decision in *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). However, in this case the trial court determined that the police did not act in good faith but instead acted in reckless disregard of the truth. Therefore, we need not address the issue raised by the state, because a good-faith exception would not apply in such a situation. *See Illinois v. Gates,* —— U.S. ——, —— —— ——, 103 S.Ct. 2317, 2344–46, 76 L.Ed.2d 527 (1983) (White, J., concurring).

Respondent is awarded $400 attorney fees on appeal.

Affirmed.

KELLEY, Justice (dissenting).

I respectfully dissent. The majority opinion has stated the applicable test for ascertainment of the validity of a search warrant. *State v. Causey,* 257 N.W.2d 288 (Minn.1977). The first inquiry by the reviewing court—here, the district court—is to determine whether any misstatements existing in the affidavit in support of the search warrant were material. If material misstatements are found, then the inquiry focuses on whether there were "deliberate or reckless misrepresentations" of fact. I conclude that any misstatements in the affidavit in support of the search warrant were, at best, immaterial. Furthermore, even if they were material there is insufficient evidence to sustain any finding that the misrepresentations were either deliberately or recklessly made.

The Wabasha Book Store in Rochester fronts on Broadway. The second story of the building contains four apartments, all on the north side of a common hallway leading from an interior stairway ascending from Broadway. Apartments 3 and 4 are both on the north side of the second floor. Apartment 4 is east of apartment 3. Along the east side of the second floor is a back porch to which there is direct access from apartment 4 and indirect access from apart-

ment 3. Officer Wegman learned from the manager of the Wabasha Book Store that defendant rented apartment 3 and frequently stayed with a girl friend named Kaye Cady who rented apartment 4. Officers had observed growing marijuana plants in the window of apartment 3. Later they observed what seemed to be the same plants on the porch to the rear of apartment 4. They had further observed the defendant using the back stairway for ingress and egress to the upstairs apartment area. Moreover, officers had observed known drug users coming to the apartments and staying for a short period of time.

In the application to search apartment 4, Officer Wegman stated he had observed the marijuana plants on the porch of apartment 4. The trial court thought this was a misstatement of a material fact because the porch itself ran along the entire east side of the second story. In fact, however, Officer Wegman's statement was true. The plants had been observed on the porch just outside (on the northerly portion of the porch) of and immediately adjacent to apartment 4 near an access leading directly from apartment 4 to the porch and away from the common ingress and egress to the porch from the hallway. From that evidence, I conclude Officer Wegman did not misstate the facts in that regard.

Secondly, Officer Wegman stated he had learned from the bookstore manager that defendant frequently stayed with Kaye Cady, a girl friend who rented apartment 4. In fact, defendant did stay at times in that apartment with a girl friend but not Kaye Cady, who had not lived there for a considerable period of time. I find it difficult to find any materiality in the fact that the applicant stated that one Kaye Cady lived in apartment 4. What was material is that the defendant frequently stayed with a girl friend in that apartment.[1] The identity of the possessor of the apartment was immate-

rial. There is no constitutional requirement that a search warrant name the person who occupies the premises. The specificity relates to the place to be searched and the thing to be seized. 1 W. LaFave, Search and Seizure § 3.1(b) (1978), quoting *United States v. Besase,* 521 F.2d 1306 (6th Cir. 1975). In my view, the fact that Kaye Cady did not occupy apartment 4 was immaterial so long as defendant was known to occupy it from time to time with a girl friend and so long as facts existed from which the officer could reasonably have concluded that the marijuana plants belonged to one or more of the occupants of apartment 4 because of their location on the porch immediately outside of apartment 4 near an access directly from it to the porch. Accordingly, I would sustain the search warrant because the affidavit with respect to the location of the plants was true and because the statement that Kaye Cady occupied the apartment was immaterial.

Moreover, even if one concludes the statements were neither true nor immaterial, I suggest there is simply no evidence to indicate Officer Wegman deliberately or recklessly misrepresented the facts. As indicated, on observing the location of the marijuana plants under all the circumstances then within his knowledge, Officer Wegman could reasonably have concluded that the marijuana plants might be found in apartment 4. Furthermore, the most that can be said about his representation that Kaye Cady lived in apartment 4 and that defendant from time to time stayed with her is that he was negligent in not further ascertaining the facts. Again, however, he did not know Kaye Cady nor did he know what she looked like. Mere negligence does not vitiate a warrant. *State v. Causey,* 257 N.W.2d at 292. *See also Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In this record, there is simply no evidence of deliberate perjury or reckless disregard of the facts. Accordingly, I

---

1. Indeed, when the search warrant of apartment 4 was executed defendant and his girl friend, both naked, were found in apartment 4. This, of course, does not relate back to validate a search warrant if otherwise defective. It does, however, it seems to me, clearly demonstrate the immateriality of the statement in the application for the search warrant that defendant was staying with his girl friend, Kaye Cady. The name of the girl friend was immaterial.

would reverse the trial court and remand the matter for trial at which the evidence seized in the execution of the search warrant would be admissible.

TODD, Justice (dissenting).

I join in the dissent of Justice Kelley.

YETKA, Justice (dissenting).

I join in the dissent of Justice Kelley.