**STATE of Minnesota, Respondent,**

v.

**Michael Lavern REESE, Appellant.**

**Nos. C6–88–2613, C1–89–374.**

Court of Appeals of Minnesota.

Oct. 3, 1989.

Review Denied Nov. 15, 1989.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, Paul Morreim, Freeborn County Atty., Albert Lea, for respondent.

C. Paul Jones, State Public Defender, Michael F. Cromett, Asst. Public Defender, Marie L. Wolf, Asst. Public Defender, St. Paul, for appellant.

Considered and decided by WOZNIAK, C.J., and FORSBERG and SHORT, JJ., without oral argument.

## OPINION

WOZNIAK, Chief Judge.

Michael Lavern Reese was convicted of drug and paraphernalia possession, unlawful possession of hypodermic needles, and unlawful possession of brass knuckles. He appeals from an order denying a motion for judgment of acquittal or new trial and/or to vacate judgment. We affirm in part, reverse in part and remand.

## FACTS

On March 28, 1988, Michael Lavern Reese was charged in Albert Lea, Minnesota with possession of marijuana in violation of Minn.Stat. §§ 152.09, subd. 1(2), 152.15, subd. 2(2); possession of marijuana with intent to manufacture in violation of Minn. Stat. §§ 152.09, subd. 1(1), 152.15, subd. 2(3); possession of clorazepate in violation of Minn.Stat. §§ 152.02, subd. 5, 152.09, subd. 1(2), 152.15, subd. 2(3); unlawful possession of legend drugs in violation of Minn.Stat. §§ 151.37, 151.29; unlawful possession of hypodermic syringes in violation of Minn.Stat. §§ 151.40, 151.29; unlawful possession of brass knuckles in violation of Minn.Stat. § 609.66, subd. 1(4); and unlawful possession of drug paraphernalia in violation of Minn.Stat. § 152.092.

The search warrant leading to Reese's arrest was procured on the basis of infor-

mation supplied by one Marvin Bergland. The record establishes that Bergland is well-known in Albert Lea as a chronic alcoholic. On March 25, 1988, Bergland was hitchhiking and generated several complaints to the Albert Lea police. A police officer picked up Bergland to take him home. The officer testified at an omnibus hearing that Bergland was obviously intoxicated. Bergland claimed he was on an "all-nighter."

Testimony indicates Bergland was relatively incoherent while talking to the officer. However, at one point, Bergland began to complain about the drug traffic in Albert Lea. He indicated concern that his four-year-old granddaughter was in danger of being hooked on drugs. The officer elicited Bergland's claim that he could show him the location and identity of two drug dealers. Bergland maintained he had friends who purchased drugs from one of the dealers "that night." It was unclear to the officer what was meant by "that night."

Bergland directed the officer to two houses on Clark Street. First, he pointed out a house, identified the resident, and said "that guy deals in a lot of pot." Bergland then directed the officer to where "the guy who would sell anything" lived. He singled out a green house and identified the house as being occupied by Michael Reese, appellant. Bergland also indicated this was where his friends had purchased the marijuana.

The officer relayed this information to a detective. The detective prepared an application for a search warrant of Reese's house, citing the information of Bergland and information another informant provided the previous summer.

The warrant was executed at 4:00 p.m. on March 25, 1988. Reese was working on his car in the driveway when the officers arrived. The warrant was properly served and read to Reese while he was in the driveway. He accompanied the officers into the house, where he indicated he could save the officers' time by showing them what they wanted. He then went into a bedroom where he produced a baggie filled with a leafy substance and another baggie filled with assorted pills.

Reese was then placed under arrest. The police continued their search of Reese's home for approximately six hours thereafter. Fifty-one items were seized.

The leafy substance in one baggie was subsequently identified as marijuana. In the other baggie, eight tablets containing clorazepate, a controlled substance, were found. Reese had on his person, at the time of the arrest, $179 in cash. Also, a number of firearms and ammunition were found. Hanging on a wall was a black leather jacket with a syringe in one pocket. Several other syringes were found throughout the house.

In a drawer, the police found three pages of handwritten notes listing various chemicals and items of equipment, as well as books on organic chemistry and pharmacopoeia; a catalog for Loompanics Unlimited; and a money order receipt and receipt for certified mail made out to Loompanics. The Loompanics catalog evidently included a "marijuana grower's handbook." On a tray located under the dresser, the police found a baggie containing less than one gram of marijuana, a second baggie containing marijuana seeds, and a roach.

A quantity of nicotinamide was found. Reese correctly identified this white powdery substance as a vitamin. However, it is also a substance commonly used to cut controlled substances. Also found were a gram scale and a Sucrets box containing a number of small zip-lock bags.

Hanging from a shelf were studded brass knuckles mounted on a wristband and a blackjack. In the same room, the police found a box containing a bong, cigarette papers, and a roach holder.

On the kitchen table, the police found lists of radio frequencies for emergency service providers and a listing of police activity codes and badge numbers for individual Albert Lea officers. There was also an addressed envelope containing an order for science equipment.

Finally, in searching the basement, the police found a well-hidden jar containing

marijuana seeds. Fluorescent grow-light fixtures were also found in that area. A videotape of the entire search was made and introduced into evidence at trial.

At trial, Reese admitted he possessed the brass knuckles, drug paraphernalia, guns, and blackjack. He did not deny that the hypodermic syringes were in his house, but maintained they had been left there about two years earlier by his ex-girlfriend's brother, who was a diabetic. He professed no knowledge of how a syringe got into the pocket of his jacket. Reese is not a diabetic.

As to the marijuana, Reese maintained that an individual, whom he refused to identify, left the baggie of marijuana in his dresser drawer shortly before the police arrived. He claimed this individual first came to the house the morning of March 25, when Reese turned down an offer to purchase the marijuana. The individual returned between 2:30 and 3:00 p.m., after the search warrant had been signed, and told Reese he left him some marijuana in the dresser drawer. Reese maintained at trial that he did not pay for the drugs.

Reese testified he dug the pills out of a chair a couple of months earlier. He believed they had been left there by a friend who later testified he had a prescription for clorazepate.

Reese acknowledged that the marijuana, marijuana seeds, and roach on the tray found under the dresser were his. He denied any knowledge of the marijuana seeds found in the basement.

Reese's attorney objected to the introduction of most of the items seized and the videotape on the grounds of relevance. This objection was overruled.

Reese also attempted to suppress all evidence seized as the fruits of an illegal search. After an omnibus hearing, this motion was denied. The trial court also allowed, over objection, testimony of a Detective Osterberg stating he had known Reese since his early days with the Albert Lea police force.

The unlawful possession of legend drugs charge was dropped before trial. The jury found appellant not guilty of possession of marijuana with intent to manufacture; guilty of possession of marijuana of less than felony amount; and guilty of all remaining offenses. Reese's motion for judgment of acquittal or a new trial was denied.

The trial court sentenced Reese to one year and one day on the possession of clorazepate, stayed execution, and placed appellant on probation for three years with a special condition that he serve 60 days in the county jail. The court also sentenced Reese to 10 days each on petty misdemeanor possession, possession of syringes, and possession of brass knuckles, to be served concurrently with the felony. The court stayed imposition of sentence on the possession of drug paraphernalia conviction. All sentences have been stayed pending appeal. Reese remains released on his own recognizance.

### ISSUES

1. Should evidence found pursuant to the execution of a search warrant be suppressed because the warrant was issued without a sufficient showing of probable cause?

2. Did certain evidentiary rulings of the trial court, specifically, (a) lawful possession of guns and ammunition, (b) references to cocaine, (c) police knowledge of appellant before search warrant was executed, and (d) certain other items seized at Reese's home at the time of arrest, deny Reese due process and a fair trial?

3. Was Reese denied his right to a speedy trial?

4. Did the trial court err in its charge to the jury concerning charges of possession of hypodermic syringe and by failing to instruct the jury on statutory exceptions to the charge of possession of metal knuckles?

5. Did the trial court err in its sentencing of Reese, specifically, with respect to multiple sentences arising from one arrest and by imposing a misdemeanor sentence for petty misdemeanor possession of marijuana?

## ANALYSIS

### 1. *Warrant*

█ Reese claims the search warrant was wrongly issued because the informant did not show firsthand, personal knowledge of the allegations or conclusions of criminality. Reese contends the informant lacked the requisite credibility, reliability, and basis of knowledge necessary for a determination of probable cause. Therefore, he argues, the search of Reese's home was illegal and the evidence found there should be suppressed based on U.S. Const. amend. IV, Minn. Const. art. 1, § 10, and Minn.Stat. § 626.21(3), (5). *See also Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *State v. Yahnke,* 336 N.W.2d 299 (Minn.1983).

Minnesota has accepted the "totality of the circumstances test" for probable cause.

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*State v. Wiley,* 366 N.W.2d 265, 268 (Minn. 1985), quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).

█ A magistrate's determination of probable cause is to be given wide deference. The reviewing court "must be careful not to review each component of the affidavit in isolation." The warrant must be upheld as long as there is "an internal coherence that [gives] weight to the whole." *Wiley,* 366 N.W.2d at 268, quoting *Massachusetts v. Upton,* 466 U.S. 727, 734, 104 S.Ct. 2085, 2089, 80 L.Ed.2d 721 (1984).

In light of this standard, there is a clearly sufficient basis for upholding probable cause. We note that in this state "the credibility of a so-called first-time citizen informer generally is presumed." *State v. Siegfried,* 274 N.W.2d 113, 115 (Minn.1978). Although Bergland was a source of citizen complaints, there is no evidence he was "part of the criminal milieu," i.e., extending to narcotics trafficking.

Where a witness has personally observed incriminating conduct, the information should be sufficient to uphold a warrant. Here, the witness viewed two acquaintances enter the home of appellant and, upon leaving, appear "zipped or zapped." The witness also demonstrated personal knowledge by correctly identifying the resident of the house.

Further, there was corroboration of the witness' testimony sufficient to uphold the warrant. The affidavit requesting the warrant notes that an unnamed informant of demonstrated reliability had informed the police that appellant was dealing cocaine the previous summer. *See Wiley,* 366 N.W.2d at 269.

We therefore conclude sufficient probable cause existed to justify the magistrate's issuing a search warrant. Since we find sufficient probable cause to support the warrant, it is unnecessary to consider the issue of whether the exclusionary rule, or a good faith exception, is applicable in this case.

### 2. *Evidentiary Errors*

#### (a) Guns and Ammunition

█ Reese contends that the seizure and introduction into evidence by videotape of his guns and ammunition constituted prejudicial error. Such evidence is claimed to be irrelevant and immaterial.

Whether particular evidence is relevant is a decision resting in the sound discretion of the trial court. *State v. Lee,* 282 N.W.2d 896, 901 (Minn.1979). The trial court held that the firearms were evidence of knowledge and intent. Additionally, the evidence was used to rebut Reese's testimony that he had not dealt drugs in two years.

Further, the court made clear to the jury that the possession of the firearms was not unlawful. Reese was acquitted of posses-

sion with intent. This shows the evidence, even if improper, was not prejudicial to Reese's case.

(b) Cocaine References

■ Reese claims the trial court erred by allowing testimony which referred to cocaine, despite the fact that appellant was not charged with any cocaine-related crimes, nor was any cocaine found at his residence.

The testimony objected to includes a witness' assertion that razor blades found in Reese's home could be used for "chopping cocaine or manicuring marijuana." Likewise, the trial court allowed testimony that nicotinamide found in Reese's home could be used as a cutting agent for cocaine.

Any references to razor blades or nicotinamide relate directly to the paraphernalia charge. Once again, the trial court and the state made it clear to the jury that no cocaine was found in the search. There was an instruction to the jury that they were not to convict appellant for any offense not charged. This curative instruction was sufficient to clear any misunderstanding the jury may have had about references to cocaine or other drugs not found in Reese's home.

(c) Testimony Regarding Prior Knowledge of Appellant by Police

■ During the state's direct examination of a police detective, the following exchange took place:

Q Detective, did you know the defendant before March 25, 1988?

A Yes, I did.

Q How long have you known who he was?

A I have known Mr. Reese since I started on the police department.

Q Approximately 16 years?

A Yes.

The witness also was asked about Reese's conduct "during the time you have known the defendant."

In *State v. Jones*, 277 Minn. 174, 152 N.W.2d 67 (1967), the Minnesota Supreme Court granted a new trial where a trial

court allowed similar testimony. However, unlike the *Jones* case, the testimony here had a purpose other than insinuating that Reese was a criminal. It was used to establish ownership of the jacket in which a syringe was found.

Once again, any error was not prejudicial. Given the strength of the evidence of guilt and the fact that Reese was acquitted of the primary felony charges, these isolated references cannot be said to have meaningfully contributed to the guilty verdict the jury did return.

(d) Miscellaneous Items Claimed Irrelevant and Prejudicial

Reese contends a number of miscellaneous items seized in the search should not have been admitted into evidence. They are objected to as irrelevant and encouraging jury speculation. This contention is unfounded. The items were clearly relevant to the possession with intent charge. They certainly were not prejudicial as Reese was found not guilty of this charge. Given the sheer number of items seized and Reese's sole occupancy, the evidence of possession was overwhelming.

3. *Speedy Trial*

■ Reese made a demand for a speedy trial on May 17, 1988. On August 11, 1988, Reese made a motion for dismissal for failure to provide a speedy trial, pursuant to Minn.R.Crim.P. 11.10, which states in part:

A defendant shall be tried as soon as possible after entry of a not guilty plea. On demand made in writing or orally on the record by the prosecuting attorney or the defendant, the trial shall be commenced within sixty (60) days from the date of the demand unless good cause is shown by the prosecution or defendant why he should not be brought to trial within that period. The time period shall not begin to run earlier than the date of the not guilty plea.

Minn.R.Crim.P. 11.10.

This motion was denied and Reese's trial commenced October 5, 1988. This covers a period of 141 days after the initial demand

was made. Reese claims failure to commence trial within 60 days warrants statutory dismissal of the charges against him.

However, *State v. Friberg*, 435 N.W.2d 509 (Minn.1989), decided after the trial of this case, holds that the 60–day limit in Rule 11.10 simply raises a presumption that a violation has occurred. The presumption may be rebutted under an analysis of the factors cited in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *Id.* at 513. The *Barker* factors to be reviewed once the presumption is raised are the reasons for delay, defendant's assertion of the right, and the prejudice suffered. *Id.*

The delay was a result of witness unavailability. Such delay is legitimate where it is not extreme or prejudicial. *See State v. Terry*, 295 N.W.2d 95, 96 (Minn.1980).

Also, the trial was delayed because of court congestion. This basis of delay is not given coequal weight with an intentional attempt by a prosecutor to delay a trial. *State v. Jones*, 392 N.W.2d 224, 235 (Minn. 1986).

Additionally, we feel Reese's inaction until the delay became allegedly excessive mitigates the severity of the delay. The *Friberg* court notes that "the frequency and force of a demand must be considered when weighing this factor and the strength of the demand is likely to reflect the seriousness and extent of the prejudice which has resulted." *Friberg*, 435 N.W.2d at 515.

■ Reese was free on his own recognizance throughout the entire period of the delay, and remains so pending appeal. All of the witnesses whom Reese called were able to testify. Finally, the anxiety Reese claims to have suffered while waiting for the trial is not sufficient grounds to show prejudice. We feel there are no grounds for Reese's contention that he was unconstitutionally denied a speedy trial.

**4. *Jury Charge***

Reese contends the trial court erred in two respects in its jury instructions.

**(a) Hypodermic Needle**

■ Reese claims he was wrongly charged under Minn.Stat. § 151.40, "Possession and Sale of Hypodermic Syringes and Needles." [1] This statute is contained in a chapter of Minnesota statutes concerned with regulating and licensing occupations, specifically, the regulation of pharmacists. Reese argues a member of the general public, not licensed to practice pharmacy, cannot be charged under this statute.

Alternatively, it is argued the statute should be held unconstitutionally overbroad because there is no exception provided for persons having a bona fide medical need to possess syringes. In this regard, only by interpreting the statute as not being applicable to the general public can this statute be saved from overbreadth.

■ In the first place, there was no objection at trial and no request for the change in instructions on this charge. A challenge to the constitutionality of a statute cannot be raised for the first time on appeal. *State v. Engholm*, 290 N.W.2d 780, 784 (Minn.1980). Since this matter is not one of fundamental law, the issue should not be raised on appeal. *State v. Malaski*, 330 N.W.2d 447, 451 (Minn.1983).

■ Further, even were this not the case, section 151.40 still applies to defendant. By its language, Minn.Stat. § 151.40 relates to any person, not simply pharmacists. The statute is not overbroad in that it does take into account syringes legitimately used at the direction of medical doctors.

1. The statute states in relevant part:
   It shall be unlawful for any person to possess, control, manufacture, sell, furnish, dispense, or otherwise dispose of hypodermic syringes or needles or any instrument or implement which can be adapted for subcutaneous injections, except by the following persons when acting in the course of their practice or em-

   ployment: * * * unless such drugs are prescribed, dispensed, and administered by a person lawfully authorized to do so, persons who administer drugs pursuant to an order or direction of a licensed doctor of medicine * * *.

   Minn.Stat. § 151.40 (1988).

(b) *Brass Knuckles*

██ Reese claims the trial court erred by not instructing the jury on Minn.Stat. § 609.66, subd. 2, which provides an exception to Minn.Stat. § 609.66, subd. 1(4), prohibiting possession of metal knuckles. Subdivision 2 provides:

Nothing in this section prohibits the possession of the articles mentioned by museums or collectors of art or for other lawful purposes of public exhibition.

Minn.Stat. § 609.66, subd. 2 (1988). The brass knuckles were hanging on the wall in Reese's home. No torturing of legislative intent or the English language could bring these facts under the sway of subdivision 2 of the statute.

5. *Sentencing*

Both parties agree the trial court wrongly sentenced Reese for a misdemeanor under Minn.Stat. § 152.15, subd. 2(5), a petty misdemeanor. Both parties request a remand for purposes of resentencing on this charge.

██ Further, Reese contends that he was improperly sentenced for four offenses which were all a part of a single behavioral incident contrary to Minn.Stat. § 609.035. In relevant part, this statute provides:

Except as provided * * *, if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses * * *.

Minn.Stat. § 609.035 (1988). It is argued that the offenses charged occurred at the same time and place and were based on identical circumstances.

This court on review must decide whether the offenses Reese was convicted of were committed in a unitary course of criminal conduct.

The approach used in determining whether two or more intentional crimes were part of the same course of conduct is to focus on the factors of time and place and also to consider whether the segment of conduct involved was motivated by an effort to obtain a single criminal objective.

*State v. Zuehlke,* 320 N.W.2d 79, 82 (Minn. 1982). This court has held that possession of two controlled substances at the same time and place, with no discernible criminal objective other than personal use, bars the imposition of separate sentences. *State v. Zimmerman,* 352 N.W.2d 452, 455 (Minn. Ct.App.1984).

We agree that Reese's convictions arise out of the same course of criminal conduct, and he was therefore improperly sentenced. All of the included sentences objected to were for drug-use related crimes. The fact situation here is practically identical to *Zimmerman.* The trial court is therefore directed to vacate the misdemeanor and petty misdemeanor sentences to be served concurrently with his felony sentence.

██ Reese also argues that the possession of a hypodermic needle should be subsumed into the paraphernalia charge. As earlier noted, the paraphernalia statute, section 152.01, subd. 18(2) (1988), includes a prohibition against paraphernalia which would be used for purposes of injection of illegal drugs.

However, prosecution under a more specific as opposed to more general criminal statute is favored. *State v. Kalvig,* 296 Minn. 395, 209 N.W.2d 678 (1973). Therefore, the hypodermic charge was properly before the jury. Reese's conviction on both charges may stand as there was ample evidence before the jury of possession of both hypodermic needles and various other forms of paraphernalia.

DECISION

Affirmed in part, reversed in part and remanded with special instructions on sentencing.

FORSBERG, Judge (concurring specially):

I concur with the opinion of the majority, but would add that even if there was insufficient probable cause for issuance of the warrant, the evidence seized is admissible under the good-faith exception to the exclusionary rule. *United States v. Leon,* 468

U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).