**STATE of Minnesota, Respondent,**

v.

**Jeffrey A. McCLOSKEY, Appellant.**

**No. C8–89–811.**

Court of Appeals of Minnesota.

Feb. 6, 1990.

Review Granted March 16, 1990.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Scott A. Hersey, Isanti County Atty., Cambridge, for respondent.

Thomas M. Kelly, Kelly & Jacobson, Minneapolis, for appellant.

Considered and decided by PARKER, P.J., and FOLEY and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

This appeal questions the sufficiency of the affidavit supporting the warrant which authorized the search of appellant Jeffrey A. McCloskey and his residence. The search yielded evidence which resulted in a conviction.

## FACTS

On April 1, 1988, a search warrant was executed at appellant's residence. A complaint was then issued, charging appellant with two counts of possession of a controlled substance with intent to distribute, two counts of possession of a controlled substance, and one count of possession of drug paraphernalia. After an omnibus hearing, appellant's motion to suppress was denied. The court found appellant guilty on all five counts after a court trial on stipulated facts. Appellant now seeks reversal of his conviction on the grounds there was no probable cause to issue the search warrant.

Isanti County Sheriff William Schultz made the affidavit in support of the search warrant. In the affidavit Schultz stated that during the previous week a person came to his office and asked to speak to him. The affidavit thereafter referred to the person as a "CRI" ("confidential reliable informant"). According to the affidavit, the informant expressed concern that appellant was selling controlled substances to juveniles. The affidavit contained no further information as to the basis of the informant's belief that appellant was selling drugs to juveniles. The informant refused to provide identification, claiming fear of retribution. To this day the identification and whereabouts of the informant are unknown.[1]

The anonymous informant stated that he/she had bought marijuana from appellant and had seen at his residence, sometime in the week prior to coming to see the sheriff, a substance which the anonymous informant said appellant referred to as being cocaine. The anonymous informant gave the sheriff a description of the substance. The sheriff's affidavit stated that the description matched the type of cocaine discovered recently in the area, namely, cocaine in raw chunk form.

At the sheriff's request, the anonymous informant returned the next day and accompanied him to view appellant's house. Along the way, the anonymous informant told him that the house had a detached garage, and also said that appellant had a number of guns, sometimes carried a 7-inch blade in his boot and had a large iguana in his house. He also gave the sheriff appellant's telephone number. The sheriff would be able to locate the informant.

---

1. County Attorney Scott Hersey admitted at oral argument to this court that neither he nor the

sheriff viewed the house and saw that it had indeed a detached garage. The sheriff checked public records and found the telephone number given by the anonymous informant was appellant's and that appellant and his wife owned the house.

The sheriff stated in the affidavit that he had checked on police sources and learned the following about appellant:

The Isanti County Sheriff's Department contact card showed a DWI arrest in 1982, a probation violation warrant in 1983, a Ramsey County warrant in 1986 for expired plates, and a 1986 Hennepin County warrant for speeding. The traffic record showed McCloskey to be suspended several times for unpaid fines, a no insurance conviction, a DWI, and several speeds. The criminal history showed a 1975 arrest by the St. Paul Police Department for criminal damage to property, for which the disposition was unknown. The record also showed a 1977 arrest by the St. Paul Police Department for vehicle theft, which matter was not prosecuted.

The sheriff gave conclusory reasons in the affidavit for crediting the anonymous informant: the anonymous informant gave information against his own penal interest with self-verifying detail, and the sheriff had been able to verify some elements of the information. The sheriff also surmised that the fact that the anonymous informant expressed concern about the sale of drugs to juveniles provided a valid reason for the anonymous informant to give the information.

When the sheriff's department executed the search warrant, drug paraphernalia, about 5.5 grams of methamphetamine, and 25 grams of marijuana were found and seized. A green lizard type animal was seen at the house. No guns or cocaine were seized.

## ISSUE

Should the evidence seized pursuant to the search warrant have been suppressed because of lack of probable cause in the supporting affidavit?

## ANALYSIS

The United States and Minnesota Constitutions protect citizens from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Minn.Stat. § 626.08 (1986) provides "[a] search warrant cannot be issued but upon probable cause, supported by affidavit."

Probable cause to search is determined by the "totality of the circumstances." *State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985) (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). Under the totality of the circumstances test:

The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Wiley*, 366 N.W.2d at 268 (quoting *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332).

In general, a magistrate's finding of probable cause should be paid great deference by reviewing courts. *Wiley*, 366 N.W.2d at 268; *see also Gates*, 462 U.S. at 236, 103 S.Ct. at 2331. "Deference to the magistrate, however, is not boundless." *United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984).

Even if [a] warrant application [is] supported by more than a bare bones affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant [is] invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances.

*State v. Gabbert*, 411 N.W.2d 209, 212 (Minn.Ct.App.1987) (quoting *Leon*, 468 U.S. at 915, 104 S.Ct. at 3416–17).

As noted in *Hanson v. State*, 344 N.W.2d 420 (Minn.Ct.App.1984), the supreme court in *Gates* emphasized that the basis for the informant's knowledge, reliability and ve-

racity are closely intertwined issues which may be considered in determining whether there is probable cause to support a search warrant. *Id.* at 423; *see also State v. Doyle*, 336 N.W.2d 247, 249–50 n. 1 (Minn. 1983). Furthermore, as noted by our own supreme court, *Gates* held that:

> Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.

*Doyle*, 336 N.W.2d at 250 n. 1 (quoting *Gates*, 462 U.S. at 239, 103 S.Ct. at 2332–33).

■ We conclude the affidavit in this case failed to provide sufficient information for the magistrate to determine whether probable cause existed. The affidavit referred to the anonymous informant as a "CRI," implying to the trial court that the police knew the informant's identity and had independent reasons to rely on the information provided. *See Wiley*, 366 N.W.2d at 269. In fact, there is no showing in this case that the anonymous informant had a track record with the police of giving accurate information in the past. *See State v. Siegfried*, 274 N.W.2d 113, 115 (Minn.1978).

■ The informant's credibility cannot be presumed under the "first time citizen informer" rule. *See id.* The rule does not extend to an anonymous informant involved in the criminal activity on which he reports. *Id.* "One who voluntarily comes forward and identifies herself is more likely to be telling the truth * * *." *State v. Lindquist*, 295 Minn. 398, 205 N.W.2d 333, 335 (1973). The informant in this case refused to identify himself or herself.

The informant, in this case, admitted purchasing marijuana.

> The credibility of such an informant cannot be assumed and it is not enough that the affidavit states in a conclusory fashion that he is credible or reliable. Rather, the affidavit must provide the magistrate with adequate information from

which he can *personally* assess the informant's credibility. emphasis added *Siegfried*, 274 N.W.2d at 114.

In *Siegfried*, . where it was unclear whether the informer was a first time citizen informer, the court found it need not reach the issue because "other information in the affidavit sufficiently supported the * * * determination [that] the primary informant was telling the truth." *Id.*

■ In this case, the information from the anonymous informant was not sufficiently corroborated to insure the informant told the truth when giving the tip. *See id.* When, as here, the tip is from an anonymous informer who admits to being part of the criminal milieu, the corroborating details must go beyond information available to the general public, such as the appellant's telephone number and the appearance and location of his house. *See United States v. Schmidt*, 662 F.2d 498, 503 (8th Cir.1981).

■ The "corroboration" about the cocaine the informant said was observed at appellant's house is also insufficient. The informant's description of cocaine which "matched" drugs found in the area was not sufficiently distinctive. Notably, an individual who had recently purchased drugs would be as likely to know what kind of cocaine was in the area through his own experience as through observation at appellant's house.

■ The fact that we find appellant had been convicted for traffic violations did not constitute corroboration for the anonymous information. While prior convictions may be corroborative, they must be relevant to the criminal activity alleged. *See State v. Cavegn*, 356 N.W.2d 671, 673 n. 1 (Minn. 1984).

In short, there was insufficient corroboration of the anonymous tip to support a finding of probable cause.

In the only reported Minnesota decision which held that information contained in a tip was sufficiently corroborated, despite the criminal activity on the part of the person who was the subject of the tip, the informant was not anonymous and the in-

formant had a track record with the police. *Wiley*, 366 N.W.2d at 268. That informant was referred to as a "CRI." *Id.* at 269.

In *Gates*, the majority noted seemingly innocent activity might become suspicious in light of an initial anonymous tip. *Gates*, 462 U.S. at 243 n. 13, 103 S.Ct. at 2335 n. 13. However, the seemingly innocent activity in *Gates* was travel to and from Florida in a manner which corroborated the anonymous tip that the defendants were bringing drugs back to Illinois for sale. *Id.* at 213, 103 S.Ct. at 2317. Here, the "corroboration," even if looked at in conjunction with the tip, provided no verification of criminal activity.

■ The sheriff's conclusion in the affidavit that the anonymous informant had made a statement against penal interest is in error. Clearly, for a statement to be made against penal interest, the identity of the person making the statement must be known.

Whether the good faith exception doctrine should apply in this case is moot since this doctrine has not been adopted in Minnesota. *See Leon*, 468 U.S. 897, 104 S.Ct. 3405; *Wiley*, 366 N.W.2d at 269 n. 2.

We remand this case to the trial court and order that the evidence seized pursuant to the search warrant be suppressed.

## DECISION

Reversed and remanded.

FOLEY, Judge (dissenting).

I respectfully dissent. It is my view that the search warrant should be sustained and the evidence admitted at the trial. In *State v. Wiley*, 366 N.W.2d 265 (Minn.1985), the Minnesota Supreme Court relied on *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), in sustaining a search warrant. The supreme court said:

In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court ruled that the presence of probable cause should be determined under a "totality of the circumstances" test:

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* at 238, 103 S.Ct. at 2332. A magistrate's determination of probable cause should be "paid great deference by reviewing courts" and a reviewing court should not review that determination *de novo*. The fourth amendment requires only that the magistrate had a "substantial basis for * * * conclud[ing] that a search would uncover evidence of wrongdoing." *Id.* at 236, 103 S.Ct. at 2331, quoting *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In reviewing the sufficiency of an affidavit under the totality of the circumstances test, courts must be careful not to review each component of the affidavit in isolation. Even if each component is judged unsubstantial, the components viewed together may reveal in the informant's tip "an internal coherence that [gives] weight to the whole." *Massachusetts v. Upton*, 466 U.S. 727, 734, 104 S.Ct. 2085, 2089, 80 L.Ed.2d 721 (1984). Furthermore, the resolution of doubtful or marginal cases should be "largely determined by the preference to be accorded warrants." *Id.*, quoting *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

*Wiley*, 366 N.W.2d at 268.

This court has rather consistently followed the "totality of the circumstances" test set out in *Wiley* and following *Gates*. As recently as October 3, 1989 in *State v. Reese*, 446 N.W.2d 173 (Minn.Ct.App.1989), *pet. for rev. denied* (Minn. Nov. 15, 1989), this court said:

The reviewing court "must be careful not to review each component of the affidavit in isolation." The warrant must be upheld as long as there is "an internal coherence that [gives] weight to the whole." *Wiley*, 366 N.W.2d at 268, quot-

ing *Massachusetts v. Upton*, 466 U.S. 727, 734, 104 S.Ct. 2085, 2089, 80 L.Ed.2d 721 (1984).

*Id.* at 177.

Here, the affidavit of the sheriff contains the following information:

The CRI told Sheriff Schultz that the CRI had seen some "crack", meaning cocaine, at the McCloskey residence within the last week. Sheriff Schultz inquired of the CRI how the CRI knew that the substance was in fact "crack" or cocaine. The CRI responded that the substance was in chunk form, was light colored, somewhat whitish, and was approximately 2½ inches in diameter. The CRI further stated that Jeffrey McCloskey was talking about the substance and talked in terms of it being coke. Your Affiant is aware that the description provided by the CRI accurately describes the type of cocaine which has been discovered in recent times in the area, being in raw chunk form.

The CRI further stated that it had purchased marijuana from Jeffrey McCloskey, but stated that the CRI was upset with McCloskey because the CRI had reason to believe that McCloskey was selling controlled substances to juveniles. While the CRI agreed to assist Sheriff Schultz in his investigation, the CRI was very concerned about the safety of the CRI, and declined to provide identification. The CRI stated that it would return to the sheriff's department the next day to further assist Sheriff Schultz in his investigation of this matter.

One day later, the CRI again came to the Isanti County Sheriff's Department, and met with Sheriff Schultz. When Sheriff Schultz requested to have the CRI show him where the McCloskey residence was, the CRI agreed, and rode with Sheriff Schultz to the vicinity of the McCloskey residence, commenting on the way there that the residence had a detached garage. Upon arriving, Sheriff Schultz saw a small residence down a long driveway a distance south of the Isanti hardware store, which did in fact have a detached garage. The CRI also gave Sheriff Schultz the telephone number which was used to contact McCloskey of 444-9456.

In his investigation, Sheriff Schultz looked up the name of Jeffrey McCloskey, and found that McCloskey did live in Isanti, and had a telephone number in the local directory of 444-9456. Sheriff Schultz also learned that the Isanti County Assessor's Office showed that Jeffrey and Robin McCloskey owned a house in the City of Isanti at Route 4, Box 1–A. The house described by the CRI met the description of the house owned by Jeffrey and Robin McCloskey contained in the records of the Isanti County Assessor's Office. The CRI further related to Sheriff Schultz that McCloskey had a number of guns, including a shotgun and a long rifle. The CRI stated that McCloskey sometimes carried a seven inch blade in his boot. The CRI further related that McCloskey had a large iguana in his house, which weighed several dozen pounds.

Your Affiant then checked on police sources regarding any illegal activities on the part of Jeffrey McCloskey. The Isanti County Sheriff's Department contact card showed a DWI arrest in 1982, a probation violation warrant in 1983, a Ramsey County warrant in 1986 for expired plates, and a 1986 Hennepin County warrant for speeding. The traffic record showed McCloskey to be suspended several times for unpaid fines, a no insurance conviction, a DWI, and several speeds. The criminal history showed a 1975 arrest by the St. Paul Police Department for criminal damage to property, for which the disposition was unknown. The record also showed a 1977 arrest by the St. Paul Police Department for vehicle theft, which matter was not prosecuted.

Your Affiant has reason to credit the information which the CRI provided to your Affiant because the information provided included information against the CRI's penal interest, the information contained self verifying detail, your Affiant was able to verify certain elements of the information provided, and the CRI

provided a valid reason for disclosing the information to law enforcement authorities, namely, concern over the distribution of controlled substances to juveniles.

Since the Minnesota Supreme Court has held that a reviewing court should not make a de novo determination, it is my view "that the magistrate had a 'substantial basis for * * * conclud[ing] that a search would uncover evidence of wrongdoing.' " *Wiley*, 366 N.W.2d at 268 (quoting *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331). Applying the rule that each component of the affidavit should not be reviewed in isolation but viewed together, the tips of the informant provided " 'an internal coherence that [gives] weight to the whole.' " *Wiley*, 366 N.W.2d at 268 (quoting *Massachusetts v. Upton*, 466 U.S. 727, 734, 104 S.Ct. 2085, 2089, 80 L.Ed.2d 721 (1984)). Even if this case could be considered a doubtful or marginal one, that resolution should be determined by the preference to be accorded search warrants, and the search warrant sustained.

The fact that the informant is referred to in a number of places as "CRI," meaning confidential reliable informant, should not defeat the validity of the search warrant when it is viewed in its entirety, and the information reported by the informant that led to the discovery of the evidence was accurate. The majority seems to make much of the point that because it was the first time the informant was reporting information to the sheriff, the sheriff should not have referred to the person as CRI. Based upon the information furnished to the sheriff, he could reasonably rely on the tips provided and the neutral magistrate could properly issue a search warrant. So far as I understand the record, identifying the informant as CRI was never raised in the lower court, and whether the informant was a man or woman hardly seems necessary to support the affidavit because the information relied upon was proved accurate.

In any event, it may be an appropriate time for the Minnesota Supreme Court to consider adopting the good faith exception to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We have a situation where the sheriff conducted a search under the authority of a warrant issued by a neutral and detached magistrate, and this normally establishes that the law enforcement officer has acted in good faith in conducting the search. In *Massachusetts v. Sheppard*, 468 U.S. 981, 987–88, 104 S.Ct. 3424, 3427, 82 L.Ed.2d 737 (1984) (citing *Leon*, 468 U.S. at 922–23, 104 S.Ct. at 3420–21), the Supreme Court has held that the exclusionary rule should not be applied when the officer conducting the search acted in objective reasonable reliance on a warrant issued by a detached and neutral magistrate that is subsequently determined to lack probable cause.

It seems to me that the majority strikes down the search warrant because the components of the warrant were considered in isolation rather than as a whole. But even if under the totality of the circumstances test the warrant lacks probable cause, the good faith exception should be applied and the exclusionary rule be held inapplicable. I would sustain the search warrant.